795 F.2d 523
 5 Fed.R.Serv.3d 849
 Claude Joseph WAGUESPACK, Plaintiff-Appellant,
v.
AETNA LIFE & CASUALTY COMPANY, et al., Defendants,
Peavey Company and Peavey International, Inc., Defendants-Appellees.
Claude J. WAGUESPACK, Plaintiff-Appellant,
v.
AETNA LIFE & CASUALTY COMPANY, et al., Defendants,
American Commercial Barge Line Company, Defendant-Appellee.
 Nos. 84-3751, 85-3472.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 1, 1986.
 
 Glenn G. Goodier, Jeanmarie LoCoco, New Orleans, La., for defendant-appellee in No. 85-3472.
 Rudolph R. Schoemann, Matt Greenbaum, New Orleans, La., for plaintiff-appellant.
 Russell D. Pulver, Charles Lugenbuhl, Jon W. Wise, New Orleans, La., for defendants-appellees in No. 84-3751.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before RUBIN, JOHNSON and JONES, Circuit Judges.
 EDITH HOLLAN JONES, Circuit Judge:
 
 
 1
 These consolidated cases involve the questions whether plaintiff Waguespack was a Jones Act seaman at the time of his accident and whether, in amending his complaint to add American Commercial Barge Line (ACBL) as a new defendant nearly four years after the accident, his attempt was time-barred because the amended complaint did not "relate back" to the original complaint under Fed.R.Civ.P. 15(c). We AFFIRM.
 
 
 2
 The district court granted summary judgment in favor of defendants Peavey Company and Peavey International, Inc., Waguespack's employer and parent company of the employer, respectively.[1] Waguespack was employed by Peavey in 1979 as a laborer, but shortly afterward began work as a "bargeman." His work consisted of removing the covers of grain barges after they entered the unloading slip, and replacing those covers once the grain had been removed by a mechanical arm. To facilitate the unloading process, floating work platforms were placed in the slip just ahead of and just behind each grain barge. The grain barge covers were stored on the work platforms during the unloading process. They were lifted and moved from the barges to the work platform by an overhead gantry system. It was Waguespack's responsibility to secure hooks at the end of lines connected to the gantry by placing hooks into the eyeholes on the grain covers. The bargemen at Peavey worked eight- or twelve-hour shifts and did not sleep or eat aboard the barges or work platforms. At no time did Waguespack ever work as a deckhand or tug pilot for Peavey, nor did he ever participate in the navigation of barges on the Mississippi River. With the exception of the five times in four years when he rode aboard a tug to go inspect the cargo of a barge awaiting clearance to dock, his sole contact with barges came in the course of his above-described duties as a bargeman. The grain barges unloaded at the Peavey facility are owned by various barge lines, including a subsidiary of Peavey.
 
 
 3
 On January 5, 1981, Waguespack was attempting to secure the gantry hook to a barge cover on a barge owned by ACBL, when the cover shifted and fell into the hold of the barge. He was thrown on his side and rolled down the cover, landing against the side of the barge at its bottom. He complained of pain in his left side and was taken to the hospital, where x-rays were taken. After ten days' absence, he returned to work and worked for Peavey until April 1983. In December 1982, he was further injured in an automobile accident. Since leaving employment with Peavey, Waguespack has received long-term disability insurance payments from this defendant.
 
 
 4
 As an initial matter, we note that the evidence relied on by both parties to the summary judgment motion was the deposition by Waguespack transcribed for this case in May 1984. A copy of the deposition accompanies his record excerpts before this court. The trial court record, however, does not reflect that the deposition was filed, as required by Fed.R.Civ.P. 30(f), "unless otherwise ordered by the court." Although Waguespack's counsel quoted excerpts from the deposition testimony in his motion opposing summary judgment and also relied on it in the hearing relating to summary judgment, it is not clear whether the court had access to or had read the deposition itself. Irrespective of the uncertainty in the record, the deposition may properly be considered on appeal because of Waguespack's consistent reliance on his deposition testimony in the district court and this court. See McDaniel v. Travelers Ins. Co., 494 F.2d 1189 (5th Cir.1974) (per curiam ); see also Fed.R.Civ.P. 32(d)(4) (errors or irregularities in the manner in which the deposition is filed are waived unless a reasonably prompt motion to suppress has been filed); Kawietzke v. Rarich, 198 F.Supp. 841 (E.D.Pa.1961). Accordingly we exercise our discretionary power to include the deposition in the record of this case and consider that testimony as evidence from which the foregoing summary of facts has been obtained. See In re GHR Energy Corp., 791 F.2d 1200, 1202 (5th Cir.1986); Dickerson v. Alabama, 667 F.2d 1364, 1367 (11th Cir.), cert. denied, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982).
 
 
 5
 Whether Waguespack can claim the benefit of Jones Act seaman status is a question whose answer first depends upon Judge Wisdom's now-famous formulation of the test in Offshore Co. v. Robison, 266 F.2d 769, 779 (5th Cir.1959):
 
 
 6
 [T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel....
 
 
 7
 To be a seaman, Waguespack must have worked on a "vessel," and therein lies the issue at the heart of the case. Waguespack contends that his duties were performed on board the numerous grain barges that docked at the Peavey facility, whether owned or not by Peavey's related companies. Alternatively, he asserts that the work platforms that were attached to the front and rear of each grain barge as it moved through the Peavey docks, and on which Waguespack stored the grain barge covers, constitute "vessels."
 
 
 8
 This court's recent en banc decision in Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067 (5th Cir.1986) disposes of two of Waguespack's contentions. First, Barrett states that although the seaman status determination is an inherently factual question, it may be determined by summary judgment in the appropriate situation. "[W]here the facts establish beyond question as a matter of law [the lack of seaman status], ... a court ... may, in the proper case, hold that there is no reasonable evidentiary basis to support a jury finding that the injured person is a seaman...." Guidry v. Continental Oil Co., 640 F.2d 523, 529 (5th Cir.) cert. denied, 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981), quoted in Barrett, 781 F.2d at 1074. Contrary to assertions by Waguespack in his appellate briefs, his deposition testimony and admissions reveal that the pivotal facts concerning his employment duties and the physical layout and characteristics of his work environment are not disputed by the parties.
 
 
 9
 Second, Barrett compels the affirmance of the district court's summary judgment to the extent that the "vessels" to which Waguespack claims to have been attached consisted of the grain barges that moored at the Peavey docks for unloading. In Barrett, acknowledging that a would-be Jones Act seaman may have performed his duties aboard a fleet of vessels, this court explained, "By fleet we mean an identifiable group of vessels acting together or under one control. (footnote omitted). We reject the notion that fleet of vessels in this context means any group of vessels an employee happens to work aboard. Unless fleet is given its ordinary meaning, the fundamental distinction between members of a crew and transitory maritime workers such as longshoremen is totally obliterated." 781 F.2d at 1074. Because Waguespack acknowledged that the grain barges moving through the Peavey facility were owned by other companies as well as by Peavey, he was attached to no identifiable fleet so as to claim seaman status.
 
 
 10
 If Waguespack is to claim seaman status, then, he must have been the member of the crew of the small floating tender platforms that were placed in the slip just ahead of and behind each grain barge. Each platform's dimensions were about 35 feet by 40 feet; with the exception of a monthly "housekeeping" chore where a work barge was used to carry debris to the Peavey yard, the platform was permanently located in a slip at the grain terminal facility; and it was used almost exclusively to facilitate the unloading of cargo from the grain barges by serving as a storage point for the covers and the work bargemen's equipment. The work platform is not self propelled, it was not designed to carry goods or passengers, it had neither navigation lights nor conventional navigational equipment, and there were no crew quarters. The structure was essentially a work platform rather than a vehicle of commerce.
 
 
 11
 Several opinions of this court have considered whether a floating work platform could be a "vessel" for Jones Act purposes. In Cook v. Belden Concrete Products, Inc., 472 F.2d 999 (5th Cir.), cert. denied, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973), it was held that a flat-deck barge which was used by Belden employees to fabricate concrete barges and which was not designed for transportation of passengers, cargo, or equipment from place to place across navigable waters was not a vessel. In Leonard v. Exxon Corp., 581 F.2d 522 (5th Cir.1978), cert. denied, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 397 (1979), the court held that four work barges used as a construction platform which were neither designed for navigation nor engaged in navigation at the time of the accident were not vessels. Finally, and presenting the closest analogy to this case, in Bernard v. Binnings Construction Co., Inc., 741 F.2d 824 (5th Cir.1984), this court found that a work punt, a small raft from which the employee broke cement and guided sheet pilings, was not a vessel. Although the work punt frequently moved around a work area, it functioned primarily as a work platform. The opinion contains an extensive discussion of numerous cases, in this circuit and others, which have denied vessel status to this type of platform. These cases convince us that the "work barges" upon which Waguespack conducted part of his job duties are not, as a matter of law, comprehensible within the Jones Act definition of a vessel.
 
 
 12
 The remaining issue in the case is whether the district court properly dismissed Waguespack's amended complaint against ACBL as being time-barred. Waguespack's accident occurred on January 5, 1981, and he moved to amend his complaint to join ACBL on October 12, 1984, after the ordinary elapse of the three-year statute of limitations. 46 U.S.C. Sec. 763a. The amended complaint was timely filed only if it "related back" to the original complaint pursuant to Fed.R.Civ.P. 15(c). Rule 15(c) provides that an "amendment changing the party against whom a claim is asserted relates back if ..., within the period provided by law for commencing the action against him, the party to be brought in by amendment ... has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." Waguespack does not argue that ACBL had received actual notice of the action before being joined, nor has he contested ACBL's evidence that there is no identity of interest between ACBL and any of the original defendants sufficient to have given ACBL constructive notice of the action timely. See, e.g., Hendrix v. Memorial Hosp. of Galveston Cy., 776 F.2d 1255, 1257-58 (5th Cir.1985); Kirk v. Cronvich, 629 F.2d 404, 406-07 (5th Cir.1980). We find no merit in Waguespack's other attempts to show that his suit against ACBL was timely, including his argument that exposure to solidary liability under Louisiana law suspends the running of a federal statute of limitations or the specific requirements of Rule 15. See Bush v. Oceans Int'l, 621 F.2d 207, 211 (5th Cir.1980); Flowers v. Savannah Machine & Foundry Co., 310 F.2d 135 (5th Cir.1962).
 
 
 13
 For the foregoing reasons, the district court's award of summary judgment to Peavey Company and Peavey International, Inc., and dismissal of the claim against ACBL are AFFIRMED.
 
 
 
 [1]
 Other defendants joined in the action have either been voluntarily dismissed or were never served and have not made appearances in the lawsuit