**Robert DUCOTE and Bessie Ducote, Plaintiffs–Appellants,**

**v.**

**V. KEELER & CO., INC., Defendants,**

**Lloyds of London and Employers National Insurance Co., Defendants–Appellees.**

No. 91–4645
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 21, 1992.

Winston E. Rice, Eileen R. Madrid, Susan M. Vance, Rice, Fowler, Kingsmill, Vance, Flint & Booth, New Orleans, La., for Robert M. Collins, as Rep. of Certain Under Lloyds London.

David R. Dugas, Caffery, Oubre, Dugas & Campbell, New Iberia, La., for Employers Nat'l.

Before WISDOM, KING, and GARWOOD, Circuit Judges.

WISDOM, Circuit Judge.

This case presents a recurring question in Jones Act disputes: What is a vessel? The plaintiffs-appellants, Robert and Bessie Ducote, argue that the district court erroneously granted the defendants' motion for summary judgment. The district court held, as a matter of law, that Mr. Ducote is not a seaman because the spud barge on which he worked is not a vessel. Because we find that a reasonable juror could conclude that the spud barge was a vessel, we reverse and remand.

## BACKGROUND

On March 23, 1988, Robert Ducote was operating a dragline/crane from the deck of a spud barge located on the Red River near Natchitoches, Louisiana. He was allegedly injured when the crane began to tip over and he was forced to jump out of the cab. Mr. Ducote was driving pilings as part of a piledriving and revetment project being performed for the United States Army Corps of Engineers. Mr. Ducote was hired by either the general contractor, V. Keeler and Company, Inc., or the joint venture of Greg O'Neal and E & B Construction Company, which was supplying all of the labor and equipment.

In August of 1988, Mr. Ducote and his wife brought suit against Keeler and others [1] claiming compensation as a Jones Act

John T. Bennett, Marksville, La., for Ducote.

1. Through supplemental and amending petitions Mr. Ducote named as additional defendants: Houston General Insurance Company, which provided to Keeler a policy of worker's

seaman or, alternatively, as a maritime worker entitled to damages for vessel negligence under § 5(b) of the Longshore and Harbor Workers' Compensation Act. In September 1990, after several defendants had been dismissed, Robert Murray Collins, as Representative of Certain Underwriters at Lloyd's, London, filed a motion for summary judgment. In October 1990, Employers National Insurance Company joined in the motion for summary judgment and a stipulation was entered into between the plaintiffs and the defendants agreeing that the § 5(b) claim was contingent upon a finding that the spud barge was a vessel.

On November 9, 1990, the district court filed its ruling that, as a matter of law, the spud barge was not a vessel. The district court dismissed the claims against the defendants Certain Underwriters at Lloyd's, London and Employers National Insurance Company. Mr. Ducote filed a notice of appeal to this Court. In March 1991, this court granted a motion to dismiss the appeal as premature. In April 1991, the district court dismissed Houston General Insurance Company as a party-defendant.

The plaintiffs then filed a motion for new trial or rehearing under Rule 59. The district court initially denied the motion as untimely. In July 1991, the district court

vacated that denial for good cause shown, and granted reconsideration of its ruling that the spud barge was not a vessel. On reconsideration, the district court, on July 3, 1991, denied the motion for a new trial for the reasons stated in its November 9, 1990, ruling.

Judgment was entered on July 22, 1991, and this appeal was filed on July 29.

## DISCUSSION

■■■ The Jones Act, 46 U.S.C.App. § 688, provides a cause of action in negligence for "any seaman who shall suffer personal injury in the course of his employment". A prerequisite to seaman status, and thus to recovery under the Jones Act, is the existence of a vessel.[2] The Jones Act does not define the term "vessel", and this Court has repeatedly held that the term is incapable of precise definition.[3] Because of this imprecision the question whether a floating structure is a vessel is fact-specific and is usually left to the jury.[4] Furthermore, because of the policy of providing an expansive remedy for seamen, even marginal claims are properly left for jury determination.[5]

■■■ This Court has held, however, that summary judgment may be appropriate

---

compensation and employer's liability insurance with a maritime coverage endorsement; Certain Underwriters at Lloyd's, London, which provided to Keeler excess maritime employer's liability coverage; Employers National Insurance Company, which provided to Keeler comprehensive general liability coverage; O'Neal Brothers Company, Inc., Greg O'Neal, and E & B Construction Company, as alleged employers; American General Companies and Commercial Union Insurance Company, as insurers of O'Neal Brothers; Big Oak Towing, which provided the tug that moved the barge; and McDonough Marine Service (Marmac), which allegedly owns the barge.

2. A seaman has been defined for Jones Act purposes as an employee (1) who is permanently assigned to a *vessel* or who performs a substantial part of his work on the *vessel* and (2) whose duties contribute to the function of the *vessel* or to the accomplishment of its mission. *See, e.g., McDermott International v. Wilander,* 498 U.S. ——, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991); *Ellender v. Kiva Construction &*

*Engineering, Inc.,* 909 F.2d 803, 805 (5th Cir. 1990); and *Waguespack v. Aetna Life & Casualty Co.,* 795 F.2d 523, 525 (5th Cir.), *reh'g denied, en banc,* 801 F.2d 398 (5th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 163 (1987) (quoting *Offshore Company v. Robison,* 266 F.2d 769, 779 (5th Cir.1959)).

3. *E.g., Bernard v. Binnings Construction Co.,* 741 F.2d 824, 829 (5th Cir.1984) and *Offshore Company v. Robison,* 266 F.2d 769, 779–80 (5th Cir. 1959).

4. The Supreme Court recently noted that "'[t]he inquiry into seaman status is of necessity fact-specific'". *Southwest Marine v. Gizoni,* —— U.S. ——, 112 S.Ct. 486, 492, 116 L.Ed.2d 405 (1991) (quoting *Wilander,* 111 S.Ct. at 818). *See also, Ellender,* 909 F.2d at 805; *Bernard,* 741 F.2d at 827; and *Robison,* 266 F.2d at 779–80.

5. *See, e.g., Sharp v. Johnson Brothers Corp.,* 917 F.2d 885, 888 (5th Cir.1990), *reh'g denied,* 923 F.2d 46 (1991); and *Leonard v. Exxon Corporation,* 581 F.2d 522, 524 (5th Cir.), *reh'g denied,* 586 F.2d 842 (5th Cir.1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 397 (1979).

when there is no evidence from which reasonable persons might draw conflicting inferences on any of the elements of the seaman test.[6] The district court, relying on this Court's opinion in *Ellender v. Kiva Construction & Engineering, Inc.*,[7] held that the spud barge on which Mr. Ducote was working was not a vessel as a matter of law. In *Ellender* we noted that this Court has upheld summary judgments holding that a single construction barge is not a vessel and several barges strapped together to form a floating work platform do not constitute vessels under the Jones Act.[8]

One of the earliest cases to hold that a work platform was not a vessel is *Cook v. Belden Concrete Products, Inc.*.[9] In that case, the work platform was found to be "legally indistinguishable from a floating dry dock which, at least while it is secured to land, is not a vessel for purposes of the Jones Act or general maritime law."[10] In *Bernard v. Binnings Construction Company, Inc.*,[11] the Court reviewed the line of cases beginning with *Cook* and found three factors common to the structures involved in those cases:

> (1) the structures involved were constructed and used primarily as work platforms; (2) they were moored or otherwise secured at the time of the accident; and (3) although they were capable of movement and were sometime[s] moved across navigable waters in the course of normal operations, any transportation function they performed was merely incidental to their primary purpose of serving as work platforms.[12]

Turning to an analysis of these three factors we find that there is no dispute that the spud barge in question in this case was moored at the time of the accident. Nor is there any dispute that the spud barge was used as a platform to support the dragline/crane.

■ The record is almost entirely silent, however, regarding the purpose for which this barge was constructed. As this Court has noted on previous occasions, "[w]e are rarely presented with direct evidence of the subjective purpose motivating the designer or builder of a floating structure."[13] Therefore we look to whether the structure has features that objectively suggest that one of its primary purposes may be transportation over water. One such objective factor, which is present in this case, is a raked bow. While the mere presence of a raked bow does not mean that the structure is a vessel, it is a piece of evidence from which conflicting inferences could be drawn. This is especially true when, as is the case here, the record does not reveal any evidence establishing that the barge was not constructed to be used as a vessel.

The factor which most distinguishes this case from the *Cook* line of cases, however, is the third factor: that any transportation function be merely incidental to the work platform function. In analyzing this factor, we are reminded of the admonition in *Leonard v. Exxon Corporation* "that *Cook* and now the instant case deviate from the general practice permitting Jones Act issues to be submitted to the jury, and accordingly should be applied restrictively."[14]

Thus, in *Brunet v. Boh Brothers Construction Co.*,[15] the Court reversed a summary judgment holding that a pile-driving barge that was also used to transport a crane from one jobsite to another was not a vessel. Similarly, in *Sharp v. Johnson*

**6.** *See, e.g., Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1074 (5th Cir.1986) (en banc) (quoting *Guidry v. Continental Oil Co.,* 640 F.2d 523, 529 (5th Cir.1981)).

**7.** 909 F.2d 803 (5th Cir.1990).

**8.** *Ellender,* 909 F.2d at 806.

**9.** 472 F.2d 999 (5th Cir.), *reh'g denied,* 472 F.2d 1405 (5th Cir.), *cert. denied,* 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973).

**10.** *Cook,* 472 F.2d at 1000–1001.

**11.** 741 F.2d 824 (5th Cir.1984).

**12.** *Bernard,* 741 F.2d at 831.

**13.** *Bernard,* 741 F.2d at 832, n. 25.

**14.** *Leonard,* 581 F.2d at 524.

**15.** 715 F.2d 196 (5th Cir.1983).

*Brothers Corp.,*[16] the Court reversed a summary judgment holding that two spud barges used as pile-driving barges, and two ordinary flat deck barges, were not vessels. In both *Brunet* and *Sharp* the Court found that the jury was entitled to decide whether the transportation function these barges provided was merely incidental to their function as work platforms because the barges were used to transport the cranes from one jobsite to another and because the barges were moved considerable distances during the course of the current job.

The record does not disclose whether the spud barge in this case was intended to be used to transport the dragline/crane from one job to another.[17] Nor had it yet been moved any considerable distance during the course of this project. The scope of the project, however, called for the spud barge to be moved approximately five miles along the bank of the Red River. This planned movement distinguishes this spud barge from the structures in the *Cook* line of cases.[18] In all of those cases, the most significant movement of the structure was its initial movement to the job site. Once the platforms were brought to the work site, they were either not moved at all or were moved a few feet either to accommodate the tides or to reposition slightly.[19] Such a small amount of movement does not destroy the analogy to dry docks, which are basically stationary.

In this case, however, the planned extensive movement is a factor that would support a jury finding that the transportation function of the spud barge was more than incidental to the use of the barge as a work platform.

The summary judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

16. 917 F.2d 885 (5th Cir.1990).

17. This barge was brand new and had not been used on any previous jobs.

18. *See, e.g., Colomb v. Texaco, Inc.,* 736 F.2d 218, 221 (5th Cir.1984) (*"Cook ... Leonard ...* and *Watkins [v. Pentzien Inc.,* 660 F.2d 604 (5th Cir.1981) ] ... hold that barges *rendered immobile for extended periods of time* and used as construction platforms or dry docks are not vessels in navigation.") (emphasis added). In contrast, the spud barge in this case was moved at least a short distance every day.

19. For example, in *Cook* the barge was used as a platform on which to construct concrete barges and was towed a short distance for the purpose of launching these new barges. In *Leonard,* a four-barge construction platform "was moored 'more or less permanently' to the shore" and only the fourth barge was even "moved slightly forward or backwards". *Leonard,* 581 F.2d at 524. In the case on which the district court relied, *Ellender,* the barges were moved by the tug "several feet" to facilitate construction. *Ellender,* 909 F.2d at 805.