630 So.2d 265 (1993)
Aaron P. CANTRELLE and Gina L. Cantrelle
v.
KIVA CONSTRUCTION & ENGINEERING, INC.
No. 92 CA 1482.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
Rehearing Not Considered Untimely Filed December 6, 1993.
*267 David J. Shea, Houma, for plaintiffs and appellees, Aaron and Gina Cantrelle.
Paul C. Miniclier, New Orleans, for defendant and appellant Kiva Engineering.
Paul G. Preston, New Orleans, for defendant and appellee Liberty Mut.
S. Daniel Meeks, New Orleans, for defendant and appellee Central Boat Rentals, Inc.
Before CARTER, LeBLANC and PITCHER, JJ.
PITCHER, Judge.
Aaron Cantrelle ("Cantrelle") and Gina L. Cantrelle filed suit against Kiva Construction & Engineering, Inc. ("Kiva"), Cantrelle's employer, under an admiralty and/or general maritime claim, pursuant to 28 U.S.C. § 1333(1), the Saving to Suitors clause, and LSA-C.C.P. art. 1732, as amended. Cantrelle sought damages for injuries allegedly sustained while working aboard a barge under charter by Kiva. Cantrelle's wife, Gina, sought damages for loss of consortium, love, affection, society and support. The trial judge granted judgment for Cantrelle, finding that he was a Jones Act Seaman and that he was injured aboard a vessel that was unseaworthy for the purposes for which it was intended. Gina Cantrelle's action was dismissed. Kiva filed this appeal. We affirm.

FACTUAL AND PROCEDURAL HISTORY
In February of 1989, Kiva was under contract to construct a shell pad and install a production barge for the Linder Oil Company. This project was located at a worksite known as the Linder Oil Canal, which is considered a navigable water of the State of Louisiana. Cantrelle was hired by Kiva to work on this project as a contract laborer. In order to construct the shell pad, it was necessary for Kiva to use its spud barge, the "KCE No. 1." The barge was used to support a large mobile crane, which offloaded shells and pilings for the shell pad. Additionally, Kiva rented the barges "Pam" and "Juanita" from Central Boat Rentals, Inc. ("Central Boat") to transport shells and other equipment to the worksite.
On February 6, 1989, Cantrelle was shoveling shells off of one of the barges that was tied onto the "KCE No. 1", when his shovel struck a piece of pipe or metal that was *268 hidden underneath the shells. The piece of pipe or metal was two to three inches wide and four inches in length. Upon striking the hidden object, Cantrelle injured his right wrist, hand and arm. His hand began to turn red and swell. He contacted Orin Breaux, the captain of the crewboat, "Steve W", for medical assistance and for ice to put on his arm. Breaux did not have any ice aboard his vessel, but was able to secure some from the "KCE No. 1". Cantrelle testified that several days after the accident, his injury got progressively worse. He stated that he sought emergency medical assistance, but he was not able to produce any medical records to substantiate this assertion. On March 31, 1989, Cantrelle sought the services of Dr. Thomas Givens, who referred him to Dr. Dexter Gary, an orthopedic surgeon.
An EMG study was performed on Cantrelle on April 27, 1989, which revealed a delay of the right median motor and sensory distal latencies compatible with carpal tunnel syndrome. As a result of this study, Dr. Gary performed carpal tunnel release surgery on Cantrelle at the Terrebonne General Hospital on May 10, 1989. After this surgery, Cantrelle began to complain of pain in the long, ring and little fingers. This complaint was attributed to an injury to the ulna nerve, and surgery was performed by Dr. Gary on July 20, 1990 to resolve this problem. Dr. Gary testified at his deposition that Cantrelle advised him that he had obtained excellent relief after this surgery. In February of 1990, Cantrelle began to complain about a bruised feeling in his right palm. On an April, 1990, visit to Dr. Gary, Cantrelle complained about intermittent pain in the right elbow and the tendency for his fingers to draw up at night. Another EMG study was performed. This study revealed what Dr. Gary described as ulnar nerve neuropathy, for which surgery was performed in May of 1990.
The first official report of Cantrelle's accident was received by Charlotte Patureau, Kiva's office manager, on February 14, 1989. Ms. Patureau testified that she prepared an accident report and forwarded it to Gulfland Insurance, who would be responsible for forwarding the claim to the proper compensation carrier. Based on this report, Cantrelle began receiving workers' compensation benefits that covered a period from the date of the accident through December 4, 1989, when Joseph McDermott, president of Kiva, recommended that Cantrelle's benefits be terminated. McDermott testified that his recommendation was predicated upon Dr. Christopher Cenac's medical report, which stated that Cantrelle had reached maximum medical cure.
On September 12, 1989, Cantrelle filed a seaman's petition for damages against Kiva, under the Saving to Suitors Clause, 28 U.S.C. § 1333(1), alleging a cause of action under general maritime law and designated the suit as an action under LSA C.C.P. art. 1732, as amended. Cantrelle filed several supplemental and amending petitions, adding Liberty Mutual Insurance Company ("Liberty Mutual"), Phoenix Assurance Company of New York ("Phoenix"), and Central Boat as defendants. Cantrelle also made a claim for exemplary and punitive damages, and attorney's fees, costs and penalties for Kiva's arbitrary refusal to pay maintenance. Phoenix was dismissed by Cantrelle, with prejudice, and at his cost.
In answering Cantrelle's petitions, both Kiva and Liberty Mutual requested a trial by jury. Cantrelle moved to strike the jury request and the trial judge granted the motion.
Prior to trial on the merits, Cantrelle dismissed Liberty Mutual and Central Boat and proceeded to trial against Kiva. The trial judge, after taking the matter under advisement, entered judgment against Kiva. The trial judge found that Cantrelle was in fact injured aboard a vessel under charter by Kiva, that Cantrelle was in fact a seaman, and that the vessel in question was unseaworthy for the purpose for which it was intended. From that judgment, Kiva has filed this appeal.
The following assignments of error have been set forth for our review:
1. The trial court erred in entering judgment because plaintiffs' La.C.C.P. Art. 1732(6) designation deprived the court of subject matter jurisdiction.

*269 2. The trial court erred in granting plaintiffs' motion to strike appellant's trial by jury because it violated the supremacy clause of the United States Constitution.
3. The trial court erred in granting judgment in favor of plaintiffs because Aaron Cantrelle is not a Jones Act Seaman.
4. The trial court erred in granting judgment in favor of plaintiffs because plaintiffs failed to prove an accident could have occurred.
5. The trial court erred in awarding judgment in favor of plaintiffs because plaintiffs neither alleged nor proved appellant was the demise charterer of the shell barges.
6. The trial court erred in awarding plaintiff's damages for lost wages, pain and suffering and maintenance and cure because the plaintiff failed to prove these damages by a preponderance of credible evidence.

JURISDICTION
In its first assignment of error, Kiva contends that because Cantrelle designated his action as an admiralty and/or maritime claim pursuant to LSA-C.C.P. art. 1732, as amended, the trial court, as well as this court, is deprived of subject matter jurisdiction. Kiva asserts that this designation is an election of a remedy which falls exclusively within the admiralty jurisdiction of the federal courts. We disagree with Kiva's contention.
LSA-C.C.P. art. 1732 was amended by Act 147 of the 1988 Regular Session of the Louisiana Legislature. The purpose of the amendment was to give an injured seaman, filing suit in state court, the same choice of judge or jury trial which prevails in federal court. Parker v. Rowan Companies, Inc., 599 So.2d 296, 301 (La.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 203, 121 L.Ed.2d 145 (1992); Heinhuis v. Venture Associates, Inc. of Louisiana, 558 So.2d 1244, 1247 (La.App. 1st Cir.), writs denied, 559 So.2d 1369, 1385 (La.1990). LSA-C.C.P. art. 1732(6) states:
A trial by jury shall not be available in:
* * * * * *
(6) A suit on an admiralty or general maritime claim under federal law that is brought in state court under a federal "saving to suitors" clause, if the plaintiff has designated that suit as an admiralty or general maritime claim.

* * * * * *
The United States Court of Appeals for the Fifth Circuit recently addressed this very issue in Linton v. Great Lakes Dredge & Dock Co., 964 F.2d 1480 (5th Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992). In Linton, the plaintiff filed suit in state court seeking damages for personal injuries suffered while working as a seaman. The suit was grounded on general maritime law and the Jones Act, 46 U.S.C.App. § 688. Plaintiff, in his fourth Supplemental and Amending Petition, designated his suit as "an admiralty or general maritime law claim" pursuant to LSA-C.C.P. art. 1732(6). After this designation, the defendant removed the case to federal court, contending that such a designation is the same as a Rule 9(h) designation under the Federal Rules of Civil Procedure, and as such, invokes the exclusive admiralty jurisdiction of the federal court. The federal district court refused to remand the case to state court, and the plaintiff sought an interlocutory appeal. On appeal, the Fifth Circuit rejected the defendant's argument that the article 1732(6) designation invoked the exclusive admiralty jurisdiction of federal courts. The Court of Appeal for the Fifth Circuit stated that:
[A]n article 1732(6) designation ... has no jurisdictional significance. The designation simply cannot transform the basis of state court jurisdiction from `law' jurisdiction to `admiralty' jurisdiction. Pellegrin v. International Independent Towing, No. 88-5255, slip op. at 3-4 (E.D.La. March 6, 1989). The net effect of Linton's article 1732(6) election is solely that his maritime and Jones Act claims will be tried to the bench and not to a jury. This result does not cause those claims to fall out of the "saving to suitors" clause and into the exclusive federal admiralty jurisdiction. Nor does it amount to an abandonment of the plaintiff's right to file an action "at *270 law" in state court and become an election to pursue an exclusive federal admiralty remedy.
Linton, 964 F.2d at 1491.
Kiva's argument in the instant case is the mirror image of the argument made by the defendant in Linton. Cantrelle's article 1732(6) designation of his claim was simply a procedural maneuver to take advantage of a bench trial opportunity only, and no jurisdictional significance should be attached. Once Cantrelle elected to proceed under LSA-C.C.P. art. 1732(6), his case remained in state court, but to be tried before a judge, as opposed to a jury. We view Kiva's argument as being without merit.

RIGHT TO TRIAL BY JURY
Kiva contends, in its second assignment of error, that the trial judge erred in granting plaintiffs' motion to strike appellant's trial by jury. Kiva argues that Cantrelle's article 1732(6) designation, and the subsequent striking of its request for a jury trial, violates the Supremacy Clause of the United States Constitution. U.S. Const. Art. VI, cl. 2.
This issue was recently decided on rehearing by the Louisiana Supreme Court in Parker v. Rowan Companies, Inc. In Parker, the plaintiff brought suit under the Jones Act and general maritime law. Several months after filing his initial petition, he filed an amended and supplemental petition, requesting a non-jury trial pursuant to LSA-C.C.P. art. 1732(6). The defendant answered the petition and asserted its entitlement to a jury trial. Plaintiff then filed a motion to strike the jury trial request on the grounds that under LSA-C.C.P. art. 1732(6), Louisiana no longer recognizes a jury trial when the plaintiff's claim is designated as an admiralty or general maritime claim brought under the "saving to suitors" clause. The trial court granted plaintiff's motion to strike. This court subsequently denied the defendant's writ of review. The Louisiana Supreme Court granted writs and reversed the trial court. On rehearing, however, the Supreme Court reconsidered its original decision and reinstated the trial court's ruling. The court stated:
[T]he Seventh Amendment's right to trial by jury in civil cases has not been extended to the states through the Fourteenth Amendment. A denial of a jury trial in a state court civil proceeding does not violate the due process clause. Therefore, it is within the province of the states to establish their own rules for the availability of jury trials. (Citations omitted).
Parker, 599 So.2d at 301.
This same issue arose in Linton v. Great Lakes Dredge & Dock Co. The court held that there is no Seventh Amendment or federal statutory bar which denies the Jones Act plaintiff in state court the right to elect a non-jury trial in state court. Linton, 964 F.2d at 1491.
Therefore, the trial judge did not err in granting Cantrelle's motion to strike. This assignment of error is without merit.

JONES ACT SEAMAN
Kiva contends, in its third assignment of error, that the trial judge erred in rendering judgment in favor of plaintiffs because Cantrelle is not a Jones Act Seaman. Kiva argues that Cantrelle was not a seaman because he was neither permanently assigned to nor performed substantial work on a Jones Act vessel.
In order to be considered a seaman for Jones Act purposes, the plaintiff must demonstrate:
(1) that he was assigned permanently to a "vessel", which may include special purpose structures not usually employed as a means of transport but designed to float on water; and
(2) that the capacity in which he was employed or the duties which he performed contributed to the function of the vessel.
Waguespack v. Aetna Life & Casualty Co., 795 F.2d 523, 525 (5th Cir.1986), cert. denied, 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 163 (1987), quoting Offshore Company v. Robison, 266 F.2d 769, 777 (5th Cir.1959); Ellender v. Kiva Construction & Engineering, Inc., 909 F.2d 803, 805 (5th Cir.1990). These two requirements are often referred to as the *271 Robison test. Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1072-73 (5th Cir.1986).

1.
The key to Cantrelle's seaman status, therefore, is a determination that he worked on a "vessel". Ellender, 909 F.2d at 806. The Jones Act itself does not help us in this determination in that it does not define the term "vessel". The courts have generally held that the term is incapable of precise definition. Bernard v. Binnings Construction Co., Inc., 741 F.2d 824, 829 (5th Cir. 1984). However, in an effort to guide our inquiry, we may look to the purpose for which the craft was built and the business in which it was engaged. Ellender, 909 F.2d at 806; Bernard, 741 F.2d at 829. We also find particularly instructive the fact that the United States Court of Appeals for the Fifth Circuit has routinely held, as a matter of law, that neither a single construction barge nor several barges strapped together to form a floating construction platform constitute "vessels" under the Jones Act. Ellender, 909 F.2d at 806; Waguespack v. Aetna Life & Casualty Co., 795 F.2d at 526.
Cantrelle testified at trial that, for the most part, he worked off of Kiva's barge, the "KCE No. 1". He classified his job as that of a roustabout, meaning that his job was to do whatever his employer wanted him to do. His work activities ranged anywhere from cleaning up the tool room to wiping up oil spills from the deck of the barge from a leaking drum, to offloading shells by shovel from one of the shell barges. We, therefore, must determine whether the "KCE No. 1" and/or the Barges Pam and Juanita, the shell barges, are "vessels" within the meaning of the Jones Act.
We find Brunet v. Boh Brothers Construction Co., Inc., 715 F.2d 196 (5th Cir.1983), and Sharp v. Johnson Brothers Corporation, 917 F.2d 885 (5th Cir.1990), factually similar to the case sub judice. In Brunet, the plaintiff was injured aboard a pile driving barge, known as the Barge 4000 Ringer. This barge consisted of several interlocking flexifloat platforms which carried a 150 ton crane. The court held that, even though the barge was used more often to support the crane, it could not agree that the transportation function was so incidental as to warrant a conclusion that the barge was not a "vessel" as a matter of law. The court also noted that the barge had moved to four different jobsites within the Gulf area in the six months preceding the accident.
In Sharp, the defendant bareboat chartered the tug "M/V FERDIE CANDIES" and four deck barges to assist in a bridge building project. A crane was installed on the two spud barges, CMS-206 and JG-204. The defendant used the CMS-206 for pile driving and the JG-204 for moving, digging, loading and unloading. The two other barges in the group were ordinary flat deck barges and were used for transporting and storing material. Workers frequently moved the barges throughout the day. Plaintiff was injured when the crane aboard the JG-204 dropped a load of angle iron on him. The trial court concluded that the evidence would not support a finding that the barges were "vessels" because their use in transportation was merely incidental to their primary use as work platforms. The Court of Appeals for the Fifth Circuit reversed the court's determination that the barges were not "vessels". The court noted that the barges in question were ordinary flat deck barges built to transport cargo on water. The two spud barges had raked bows and sterns. The court concluded that the existence of these features suggested that the barges were constructed primarily for transportation across navigable waters. The transportation functions of barges, in moving from job to job, were relevant considerations in both Brunet and Sharp.
The trial judge, in his very extensive written reasons for judgment, acknowledged the long line of cases which held that neither a single construction barge nor several barges strapped together to form a floating construction platform, constitute "vessels" under the Jones Act. He cited Ellender and Waguespack for this proposition. However, as a matter of fact, he found those cases inapplicable to the case sub judice. In his review of the evidence, the trial judge found that the "KCE No. 1" and the shell barges were not constructed nor used primarily as a *272 work platform in this case. He noted that there was independent moving power of the "KCE No. 1" and that it did in fact maneuver around the jobsite on its own power with use of the crane and bucket. The trial judge also found that the KCE No. 1 had a rake bow of 45 degrees and rake stern and that the KCE No. 1 and the two spud barges were standard issue deck barges built for marine transportation industry. We believe that these features support the trial judge's conclusion that the "KCE No. 1" and the shell barges were "vessels" under the Jones Act. Thus, the first requirement of the Robison test has been met.

2.
We now turn to the second requirement of the Robison test. Did Cantrelle's duties contribute to the function of the vessel or the accomplishment of its mission? The trial judge answered this question in the affirmative. He found that the enterprise of the "KCE No. 1" was to construct a shell padding and on other occasions, to drive pilings and lay pipelines. He stated, in his reasons for judgment, that "[t]here is no question to this Court that Aaron Cantrelle was furthering the purpose of the vessel, "KCE No. 1", and its attached shell barges." We believe that the record supports this finding of the trial judge. Cantrelle's offloading shells from the barge for the shell pad is an obvious example of the fact that his work was furthering the purpose of the vessel.
A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong". Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). We find no manifest error in the trial judge's findings in this assignment of error.

THE ACCIDENT
In this fourth assignment of error, Kiva contends that the trial judge erred in granting judgment in favor of plaintiff because plaintiff failed to prove an accident could have occurred. Kiva argues that the accident could not have happened because there were no shell barges at the site on the afternoon of February 6, 1989.
The determination of whether an accident occurred is inherently a factual one. The trial judge in the instant case concluded, after reviewing all of the testimony at trial, that an accident did in fact occur and that Cantrelle was injured as a result thereof. Arthur Gouner testified that he noticed Cantrelle shaking his arm. A short time after seeing Cantrelle shake his arm, Cantrelle told him that he had hurt his arm. Gouner further testified that he told Cantrelle to report the accident to Tony Landry or someone at Kiva's office. Gouner also testified that the shell barge where Cantrelle was injured did have what he described as metal stanchion protruding from the floor of the barge.
Orin Breaux testified that there was a shell barge at the site where Cantrelle claimed the injury occurred. Breaux saw pad eyes and welded plates on the deck of the barge and saw Cantrelle and a few other men shoveling shells onto the shell pad. Breaux indicated that he saw Cantrelle strike something with the shovel while it was in the palm of his hand. Breaux recalled Cantrelle coming over to his boat after the accident and saw a red spot develop on his hand. Breaux stated that he had no ice on his boat, but that he was able to get some from the "KCE No. 1".
The trial judge particularly noted that Cantrelle's credibility left a lot to be desired. He based his credibility call on a number of factors. First, Cantrelle testified he had not worked since the accident, but video surveillance indicated that he operated a bulldozer without difficulty. Second, he testified he hunted alligator during 1989 and 1990. Third, he denied any recreational fishing but, upon cross examination, he admitted to participating in and cheating at local fishing and hunting rodeos. Fourth, he fought Mr. Matherne without his arm bothering him. Fifth, he falsified his income tax returns. The trial judge further noted that Gouner's testimony was diminished because Gouner was Cantrelle's cousin, and because Gouner had a lawsuit pending against Kiva. Nevertheless, he still resolved the issue of whether *273 an accident happened in Cantrelle's favor. He did so largely based upon the testimony of Orin Breaux. The trial judge noted that Breaux was the one witness who was totally neutral and unbiased, with no financial gain, or loss of which to be fearful. The trial judge found that Cantrelle's testimony about the accident was verified, in principal portion, by the credible testimony of Orin Breaux.
An appellate court cannot disturb a trial judge's findings of fact unless they are manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 844. After our review of the record, we cannot say that the trial judge's determination that an accident did occur is manifestly erroneous or clearly wrong. There was ample evidence in the record to support the trial judge's finding. This assignment of error is without merit.

LIABILITY
Central to the question of Kiva's liability on the question of unseaworthiness is its status as a charterer of the barges. Kiva contends that Cantrelle neither alleged nor proved that Kiva was the demise charterer of the shell barges. Kiva argues that it was a time charterer, and as such, was not liable for the unseaworthiness of the vessels that it chartered from Central Boat.
A "bareboat" or demise charter requires a "complete transfer of possession, command, and navigation of the vessel from the owner to the charterer." Agrico Chemical Co. v. M/V Ben W. Martin, 664 F.2d 85, 91 (5th Cir.1981); Gaspard v. Diamond M. Drilling Co., 593 F.2d 605, 606 (5th Cir.1979). A demise is "tantamount to, though just short of, an outright transfer of ownership." Guzman v. Pichirilo, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962). It need not be in writing. Agrico Chemical Co., 664 F.2d at 91.
A vessel may also be chartered for a single voyage ("voyage charter"), or for a fixed period of time ("time charter"). In the case of conventional vessels, the owner remains in control during such charters, and provides the master and crew. Because barges lack power and usually have no crew, contracts for the mere use of a barge are usually bareboat. The owner may not only charter the barge but may also provide a tow and remain in control of the barge. Agrico Chemical Co., 664 F.2d at 91. This designation is not always inevitable.
Whatever the nature of the vessel, the rules concerning responsibility for its operation are the same. If the owner retains control, he remains liable for all damages arising out of its operation whether the charter is only for a single voyage ("voyage charter") or for a fixed time ("time charter"). If the charter is a demise charter, the charterer is responsible. Agrico Chemical Co., 664 F.2d at 91.
In the trial judge's written reasons for judgment, he specifically found that Kiva had under charter the shell barges, had full possession and control of said vessels, and was treated as the vessel's owner. We believe that the record supports this finding.
Michael Patterson, the office manager for Central Boat, testified that the barges they rented during this time period were considered as the renter's (charterer's) barge. He stated that Central Boat did not check on the barges everyday, and that the customer could do what they wanted with the barge(s). This testimony clearly supports a finding that Central Boat, as the owner, had transferred possession, command and navigation of the barges to Kiva, resulting in Kiva being the bareboat or demise charterer.
Furthermore, we are satisfied that there were sufficient allegations in Cantrelle's pleadings to notice Kiva of his intent to show that Kiva was the bareboat or demise charterer of the barges in question. This assignment of error is without merit.

DAMAGES
In its final assignment of error, Kiva contends that the trial court erred in awarding damages to Cantrelle for lost wages, pain and suffering, and maintenance and cure. Kiva argues that Cantrelle failed to prove these damages by a preponderance of credible evidence.
Before an appellate court can disturb an award by a trial court, the record *274 must clearly reveal that the trier of fact clearly abused its discretion in making the award. Mart v. Hill, 505 So.2d 1120, 1128 (La.1987); Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976). Only after the appellate court finds that the record supports that the lower court abused its "much discretion" can the appellate court lower the award to the highest point which is reasonably within the discretion of the trial court. Mart, 505 So.2d at 1128; Coco, 341 So.2d at 335.
The trial judge, after a careful review of the evidence, stated, in his written reasons for judgment, that a determination of Cantrelle's actual damages was particularly difficult for him, because of Cantrelle's lack of credibility as a witness.
Despite Cantrelle's lack of credibility, the trial judge found, as a matter of fact, that the carpal tunnel syndrome, the ulnar nerve problems, the ulnar surgeries, the curling of the fingers, and the median nerve problems were the result of Cantrelle's February 6, 1989, accident. This finding is amply supported by the medical testimony of Dr. Gary. Therefore, an award of $40,000.00 for past and future physical pain and suffering is well within the much discretion accorded to the trial judge.
Additionally, we find that the trial judge's award of $20,000.00 for permanent physical impairment and disability was not an abuse of discretion. The record reflects that Dr. Gary testified that Cantrelle suffered a 10-11% impairment to the body as a whole. This amount is not out of line when assessing the upper and lower boundaries of similar disability ratings.
In awarding the sum of $29,903.00 for lost past wages, the trial court used a job earning rate of $5.00 per hour, which was used by Dr. Randolph Rice, an economist, who testified at trial. Dr. Rice opined that Cantrelle's lost past wages through the date of trial (March 25-26, 1991) was $37,253.00. The trial judge rejected this amount because Dr. Rice's calculations included a period beyond the date of Cantrelle's maximum cure. When cutting the disability period back to the date of maximum cure, the trial judge found that Cantrelle was entitled to the sum of $29,903.00. Because the impairment of earning capacity cannot be calculated with mathematical certainty, we feel that the trial judge exercised sound judicial discretion in making this award. Philippe v. Browning Arms Company, 395 So.2d 310, 317 (La. 1980).
We do not address the failure of the trial judge to set a definitive amount for maintenance and care through October, 1990, in that Cantrelle failed to appeal this issue.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed, with all costs of this appeal assessed against appellant, Kiva Construction & Engineering, Inc.
AFFIRMED.
CARTER, J., concurs.