David TONNESEN, Plaintiff–Appellant,

v.

YONKERS CONTRACTING COMPANY, INC. and Weeks Marine Inc., a Joint Venture, Defendants–Appellees.

No. 581, Docket 95–7439.

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1995.

Decided April 19, 1996.

Before: McLAUGHLIN, LEVAL, Circuit Judges, and PARKER, District Judge.*

PARKER, District Judge:

The issue presented on this appeal is when is a barge that is used as a work platform not a "vessel in navigation" as a matter of law. David Tonnesen sued under the Jones Act, 46 U.S.C.App. § 688 *et seq.*, and the Longshore and Harborworkers Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA") for injuries sustained while working on a stationary barge, the Weeks 276. The district court granted summary judgment to Yonkers Contracting Co., Inc. and Weeks Marine Inc. ("Yonkers/Weeks"). The decision on the Jones Act claim was based on the finding that the Weeks 276 was not a "vessel in navigation." Tonnesen appeals that ruling. Given the deference to jury determinations required in close questions of seaman status under the Jones Act, *see Chandris, Inc. v. Latsis,* —— U.S. ——, ——, 115 S.Ct. 2172, 2192, 132 L.Ed.2d 314 (1995), we conclude that summary disposition was not warranted on the record below. Accordingly we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

Tonnesen was employed by Yonkers/Weeks as a dockbuilder in connection with the construction of a bridge over Jamaica Bay, Queens, New York. On the day of the injury, October 3, 1990, Tonnesen was on the Weeks 276 preparing to work on the foundation of the bridge. He was struck by a wooden form that fell from a crane.

The Weeks 276 was constructed as a car float. It had a bow and stern and was equipped with a large crane used in the construction of the bridge. The Weeks 276 had allegedly brought construction supplies to the area where Tonnesen was working. At the time of Tonnesen's injury, the Weeks 276 was afloat in the navigable waters of Jamaica Bay, but had been rendered temporarily immobile at the work site by steel spuds. The Weeks 276 had no means of self-

Paul C. Matthews (Barbara Matthews, of counsel), New York City, for Plaintiff–Appellant.

James McMahon, Bingham Englar Jones & Houston (Joseph P. Finnegan, Bingham Englar Jones & Houston, of counsel), New York City, for Defendants–Appellees.

---

* The Honorable Barrington D. Parker, Jr., United States District Judge for the Southern District of New York, sitting by designation.

propulsion, no rudder and no navigation lights, and was moved at the job site by a work boat. Tonnesen testified that the Weeks 276 "was moved on a daily or weekly basis, sometimes it didn't move for a few weeks." Frank McGahan, Project Manager for Yonkers/Weeks, testified that the Weeks 276 was moved on September 18, September 28 and lastly October 1, two days before Tonnesen was injured. McGahan also testified that "the Weeks 276 remained permanently at the job site for the duration of the project."

## DISCUSSION

■ A plaintiff's entitlement to "seaman" status and hence to the protection of the Jones Act has long been held to depend, in part, on his relationship to a "vessel in navigation." *See McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 355, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991). This appeal focuses on one issue: whether the Weeks 276 was not, as a matter of law, a "vessel in navigation" for Jones Act purposes. The question is one of first impression for this Court. In *Salgado v. M.J. Rudolph Corp.,* 514 F.2d 750, 751 (2d Cir.1975), we held that a floatable crane was a vessel for purposes of an action for breach of warranty of seaworthiness, without deciding whether it was a "vessel in navigation" for the purposes of the Jones Act. In *Harney v. William M. Moore Building Corp.,* 359 F.2d 649, 650 (2d Cir.1966), the parties stipulated that a crane barge was a "vessel in navigation," and thus, we did not consider the question. In *Bernardo v. Bethlehem Steel Co.,* 314 F.2d 604, 605 (2d Cir. 1963), we affirmed a jury verdict that a dry dock was not a "vessel in navigation," rejecting Bernardo's argument that the trial court should have ruled that the dry dock was a "vessel in navigation" as a matter of law.

■ The Jones Act, passed in 1920, provides a cause of action in negligence for "any seaman" injured "in the course of his employment." [1] 46 U.S.C.App. § 688(a). It does not define "seaman," but leaves to the courts the determination of exactly which maritime workers are entitled to admiralty's special protection. Early on, following the passage of the Jones Act, the Supreme Court considered the scope of the term "seaman." *See, e.g., International Stevedoring Co. v. Haverty,* 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926); *Warner v. Goltra,* 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254 (1934); *Norton v. Warner Co.,* 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931 (1944). By and large, the Supreme Court left definition of the Jones Act's scope to the lower courts, and considerable discord over who was a "seaman" resulted. *See Latsis,* —— U.S. at ——, 115 S.Ct. at 2184; *Johnson v. John F. Beasley Constr. Co.,* 742 F.2d 1054, 1060 (7th Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985).

In 1991, the Supreme Court, after some thirty years, revisited the frequently litigated definition of "seaman." *See Wilander,* 498 U.S. 337, 111 S.Ct. 807. Prior to *Wilander,* recovery under the Jones Act in our Circuit was permitted on three conditions: (1) the worker must have had a more or less permanent connection with the vessel, (2) the vessel must have been in navigation, and (3) the worker must have been aboard naturally and primarily in aid to navigation. *See Salgado,* 514 F.2d at 755. *Wilander* eliminated the "aid to navigation" requirement, conditioning recovery on the presence of the other two prongs. "[T]he better rule is to define ... 'seaman' under the Jones Act[ ] solely in terms of the employee's connection to a vessel in navigation.... The key to seaman status is employment-related connection to vessel in navigation." *Wilander,* 498 U.S. at 354–55, 111 S.Ct. at 817.[2]

1. The Jones Act provides, in part, that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply...." 46 U.S.C. § 688.

2. The Supreme Court recently delved more deeply into the meaning of the first requirement for seaman status, that is, what relationship a worker must have to a vessel to qualify for recovery under the Jones Act. *See Latsis,* —— U.S. ——, 115 S.Ct. 2172. It held that the "employment-related connection" necessary for seaman status comprises two basic elements: the worker's duties must contribute to the function of the vessel or to the accomplishment of its mission,

▉ A prerequisite to seaman status and thus to recovery under the Jones Act, therefore, is the existence of a "vessel in navigation." Courts considering the question of whether a particular structure is a "vessel in navigation" typically find that the term is incapable of precise definition: "[a]ttempts to fix unvarying meanings having a firm legal significance to such terms as 'seaman,' 'vessel,' 'member of a crew' must come to grief on the facts." *Bernard v. Binnings Construction Co.*, 741 F.2d 824, 829 n. 14 (5th Cir.1984)(citing *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir.1959)).

▉ Because the answer is fact-specific, the Supreme Court has consigned the question to the jury. *See, e.g., Latsis,* —— U.S. at ——, 115 S.Ct. at 2192 ("the underlying inquiry whether a vessel is or is not 'in navigation' for Jones Act purposes is a fact-intensive question that is normally for the jury and not the court to decide.")(citing *Butler v. Whiteman*, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958) (per curiam)). Accordingly, summary judgment on the "vessel in navigation" question is only appropriate "where the facts and the law will reasonably support only one conclusion." *Latsis,* —— U.S. at ——, 115 S.Ct. at 2192 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). This authority teaches that, under the Jones Act, the term "vessel" has such a wide variety of meaning that, except in rare cases, only a jury or trier of facts can determine its application in the circumstances of a particular case. *See Bernard*, 741 F.2d at 827; *Sharp v. Johnson Brothers Corp.*, 917 F.2d 885, 888 (5th Cir.1990), *cert. denied*, 508 U.S. 907, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993). In addition, the policy of providing an expansive remedy for seamen, *see Cox v. Roth*, 348 U.S. 207, 210, 75 S.Ct. 242, 244, 99 L.Ed. 260 (1955) (" 'As welfare legislation, [the Jones Act] is entitled to a liberal con-

struction to accomplish its beneficent purposes.' ") (citation omitted), mandates that even marginal claims are properly left for a jury's determination. *See, e.g., Ducote v. V. Keeler & Co., Inc.*, 953 F.2d 1000, 1002 (5th Cir.1992); *see Grimes v. Raymond Concrete Pile Co.*, 356 U.S. 252, 253, 78 S.Ct. 687, 688, 2 L.Ed.2d 737 (1958).

In holding that the Weeks 276 was not a "vessel in navigation" as a matter of law, and granting summary judgment in favor of Yonkers/Weeks, the district court here relied primarily upon *DiGiovanni v. Traylor Bros., Inc.*, 959 F.2d 1119 (1st Cir.) (en banc), *cert. denied*, 506 U.S. 827, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992). DiGiovanni was employed to work on a crane barge, the BETTY F, and was injured while guiding the crane in bridge construction. On petition for rehearing, after a panel had affirmed a jury verdict that DiGiovanni was a seaman, the First Circuit en banc held that the BETTY F was not a "vessel in navigation" as a matter of law. *See DiGiovanni*, 959 F.2d at 1120.

Over a vigorous dissent, the majority purported to follow the Fifth Circuit's test for what is not a "vessel in navigation" as set forth in *Bernard*, 741 F.2d 824. The Fifth Circuit had explained that "vessels in navigation" are "structures designed or utilized for 'transportation of passengers, cargo or equipment from place to place across navigable waters.' " *Bernard*, 741 F.2d at 828–29 (citation omitted). The *DiGiovanni* majority stated its new rule to be "if a barge, or other float's 'purpose or primary business is *not* navigation or commerce' then workers assigned thereto for its shore enterprise are to be considered seamen only when it is in actual navigation or transit." *DiGiovanni*, 959 F.2d at 1123 (quoting *Bernard*, 741 F.2d at 829)(emphasis in original). Because "[t]he BETTY F had transported nothing for a month," and since then "was simply moved

and the worker must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in both its duration and its nature. See *Latsis,* —— U.S. at——, 115 S.Ct. at 2186. Here, because the district court granted summary judgment solely on the ground that the Weeks 276 was not a "vessel in navigation," we do not reach this alternate basis for summary judgment, that is, whether Tonnesen

had the requisite "employment-related connection" to a vessel to qualify as a seaman for purposes of the Jones Act. We confine our decision to the sole issue of whether the Weeks 276 was not a "vessel in navigation" as a matter of law. Thus, on remand, Yonkers/Weeks is free to reassert its summary judgment motion based on whether Tonnesen had the required "employment-related connection" to a vessel.

about the piers for working convenience, and at night for safety," the majority concluded its business was not navigation or commerce. *DiGiovanni,* 959 F.2d at 1124.

Although the majority quoted *Bernard,* it applied the Fifth Circuit's test far more restrictively than the Fifth Circuit, or, for that matter, any circuit, ever had. *See DiGiovanni,* 959 F.2d at 1128 (Torruella and Bownes, *JJ.,* dissenting). According to the majority, a structure must be used primarily for the transportation of cargo or be engaged in navigation at the time of the injury to qualify for vessel status. *DiGiovanni,* 959 F.2d at 1123. The majority essentially substituted actual navigation as the sole requirement for vessel status. Because the BETTY F had not transported anything for a month, the majority concluded that its business was not navigation. *DiGiovanni,* 959 F.2d at 1124.

▮ We believe the First Circuit substantially altered the Fifth Circuit's test, and decline to follow its restrictive interpretation of "vessel in navigation." Instead, we essentially adopt the test as applied by the Fifth Circuit (with a qualification explained below), which we believe is more consistent with the Supreme Court's insistence on the preservation of a jury trial on reasonably disputed elements of Jones Act claims. *See, e.g., Latsis,* —— U.S. at ——, 115 S.Ct. at 2192; *Senko v. La Crosse Dredging Corp.,* 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957); *Gianfala v. Texas Co.,* 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955) (per curium).

The Fifth Circuit first stated its test in *Cook v. Belden Concrete Products, Inc.,* 472 F.2d 999 (5th Cir.), *cert. denied,* 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973), in which it held that structures analogous to dry docks, whose purpose is to provide a work platform, even if afloat, are not Jones Act vessels. It held that:

> the determinative factors ... are the purpose for which the craft was constructed and the business in which it is engaged.... [A] platform ... not designed for the purpose of navigation[, however,] ... might be classified as a vessel ... if at the time of ... injury it had actually been engaged in navigation.

*Cook,* 472 F.2d at 1001–02 (internal quotation and citation omitted). *Cook* defined "navigation" as the "transportation of passengers, cargo, or equipment from place to place across navigable waters." *Cook,* 472 F.2d at 1002.

*Cook* clarified when summary judgment would be appropriate. It explained that a permanent fixation to shore or bottom, *see Cook,* 472 F.2d at 1001, was not the only basis for concluding that a structure was analogous to a dry dock, and thus, not a "vessel in navigation" as a matter of law. For the purpose of determining whether a vessel was "in navigation," the court distinguished two different types of movement. For example, if the structure were used to transport passengers, cargo, or equipment from place to place across navigable waters, it would be considered a "vessel in navigation" under the Jones Act. If, however, the structure was capable of mere "perpendicular and lateral" movement—the type of movement which is "necessarily part of the regular operation of floating dry docks and similar structures," *Cook,* 472 F.2d at 1002—such a structure would not be a "vessel in navigation." Applying its test, it held that although the barge at issue "was capable of limited movement and was, in the normal course of its service, towed from point-to-point in ... navigable waters," *Cook,* 472 F.2d at 1001, it was not a "vessel in navigation" because it was neither designed nor used to transport passengers, cargo, or equipment from place to place across navigable waters, and was not engaged in navigation at the time of the injury.

Eleven years later in *Bernard,* the Fifth Circuit reaffirmed the test set forth in *Cook.* It restated that in "evaluating a structure's status, we consider the purpose for which the craft is constructed and the business in which it is engaged," but that a structure not constructed for and not engaged in "navigation or commerce across navigable waters may nonetheless satisfy the Jones Act's vessel requirement if, at the time of the worker's injury, the structure was actually engaged in navigation." *Bernard,* 741 F.2d at 829 (internal quotations and citations omitted). And, again, it observed that the "term vessel has generally been defined broadly and, in its

traditional sense, refers to structures designed or utilized for transportation of passengers, cargo or equipment from place to place across navigable waters." *Bernard*, 741 F.2d at 828–29.

*Bernard* then surveyed post-*Cook* decisions granting summary judgment on the grounds that the structures at issue were floating work platforms, and not "vessels in navigation" as a matter of law. In an attempt to define that rare instance when a court may take a Jones Act claim from the trier of fact, *Bernard* set forth the factors common to these decisions: "(1) the structures involved were constructed and used primarily as work platforms; (2) they were moored or otherwise secured at the time of the accident; and (3) although they were capable of movement and were sometimes moved across navigable waters in the course of normal operations, any transportation function they performed was merely incidental to their primary purpose of serving as work platforms." *Bernard*, 741 F.2d at 831.

In subsequent cases where these three factors were present, the Fifth Circuit has upheld summary judgment on the ground that the barge at issue was not "a vessel in navigation" as a matter of law. *See, e.g., Burchett v. Cargill, Inc.*, 48 F.3d 173 (5th Cir.1995); *Ellender v. Kiva Constr. & Eng'g, Inc.*, 909 F.2d 803 (5th Cir.1990); *Ducrepont v. Baton Rouge Marine Enters., Inc.*, 877 F.2d 393 (5th Cir.1989). It has recognized, however, that the cases stemming from *Cook*,

" 'deviate from the general practice [of] permitting Jones Act issues to be submitted to the jury, and accordingly should be applied restrictively.' " *Ducote*, 953 F.2d at 1003 (quoting *Leonard*, 581 F.2d at 524). It is this note of caution and its actual restrictive application in *Brunet v. Boh Brothers Construction Co.*, 715 F.2d 196 (5th Cir.1983), *Sharp*, and *Ducote* that we believe the First Circuit overlooked in *DiGiovanni*.

For example, in *Brunet*, the plaintiff was injured aboard a pile-driving barge that carried a 150–ton crane. The barge had been moved to the job site by tug boats and had been so moved within the region four times in the six months preceding the accident. At the time of the accident, however, the barge was moored. The district court granted summary judgment in favor of the defendant. The Fifth Circuit reversed, holding that the "barge by necessity is designed to transport a pile-driving crane across navigable waters to jobsites that cannot be reached by land-based pile-drivers ... While we agree that the barge was used more often to support the crane than to transport it, we cannot agree that the transportation function was so 'incidental' as to warrant a conclusion that the barge was not a vessel as a matter of law." *Brunet*, 715 F.2d at 198.

*Brunet*, Sharp and *Ducote* teach that *Cook* and its progeny must be read narrowly to preserve a jury determination on the "vessel in navigation" question where there is some evidence of a transportation function.[3]

---

3. In *Sharp*, the plaintiff was the leaderman of a pile-driving crew assigned to a group of vessels—a tug boat and four deck barges—two of which were used to transport a pile-driving crane to and around jobsites. He was injured when a crane mounted on one of the barges, which was moored at the time, dropped a load of angle iron on him. The district court granted summary judgment for the defendants on the Jones Act claim on the ground that the barges were not "vessels in navigation," because their use in transportation was merely incidental to their primary use as work platforms. The Fifth Circuit reversed. It observed that none of the barges was designed as a work platform, and held that transporting a pile-driving crane to and around jobsites was sufficient evidence to support a jury finding that the barge's transportation function was not merely incidental to its work platform function. *Sharp*, 917 F.2d at 888–89.

In *Ducote*, the plaintiff was injured while driving pilings with a dragline/crane from the deck of a spud barge. The district court ruled that, as a matter of law, the spud barge was not a "vessel in navigation." On appeal, the Fifth Circuit noted that the barge was moored at the time of the accident and there was no dispute that it was used as a platform to support the dragline/crane. *Ducote*, 953 F.2d at 1003. It further noted that the barge had not yet been moved any considerable distance during the course of the project. *Ducote*, 953 F.2d at 1004.

The Court observed, however, that the record was "almost entirely silent" as to the purpose for which the barge had been constructed. It noted the presence of a raked bow as a piece of evidence from which conflicting inferences could be drawn. *Ducote*, 953 F.2d at 1003. Finally, it held that the case could be distinguished from the *Cook* line of cases, on the basis that "[t]he record does not disclose whether the spud barge

Summary judgment was appropriate in, for example, *Burchett* because the barge at issue had no transportation function since it had been permanently moored to the bottom of the Mississippi River for a number of years, *see Burchett*, 48 F.3d at 175. Summary judgment was appropriate in *Ducrepont* because the barge was never moved from its location on the bank of the Mississippi River, *see Ducrepont*, 877 F.2d at 395. Similarly, no triable issue was raised in *Ellender* because the transportation function was clearly incidental to the use of the barge as a work platform. *See Ellender*, 909 F.2d at 808.

■ While we essentially adopt the Fifth Circuit's test of when a floating structure is a "vessel in navigation," we depart from that test in one regard. We disagree with the Fifth Circuit's focus on the *original* purpose for which the structure was constructed, *see Bernard*, 741 F.2d at 831. Rather, we think the important factor is the purpose for which the structure is presently being used—e.g., transportation, construction, etc. Therefore, the first prong of our summary judgment test focuses on the present, rather than the original, purpose of the floating structure. The second and third prongs of our test are identical to those enunciated in *Bernard*, as noted above. Our test of whether summary judgment is warranted, then, considers (1) whether the structure was being used primarily as a work platform during a reasonable period of time immediately preceding the accident; (2) whether the structure was moored or otherwise secured at the time of

the accident; and (3) whether, despite being capable of movement, any transportation function performed by the structure was merely incidental to its primary purpose of serving as a work platform.

■ As to whether summary judgment was appropriate in this case, the evidence is incomplete and supports competing inferences. The record suggests that, directly preceding the accident, the primary purpose of the Weeks 276 was to serve as a work platform. However, in an affidavit opposing summary judgment, Tonnesen claimed that the Weeks 276 also "help[ed] to bring construction supplies to the area," though he did not specify when that occurred.[4] The present purpose of the structure cannot therefore be determined as a matter of law, at least not without further factual development.

Regarding the second prong, if the Weeks 276 were recently used for the transportation of passengers, cargo, or equipment across navigable waters, the fact that it was moored at the time of the accident would not automatically disqualify it from vessel status.[5] *See Latsis*, —— U.S. at ——, 115 S.Ct. at 2192; *Cook*, 472 F.2d at 1001. On the other hand, if the Weeks 276 were not used for the purpose of transportation across navigable waters, the perpendicular and lateral movement required to reposition it along the cross bay bridge, which is necessarily part of the regular operation of floating dry docks and similar structures, would be insufficient to raise a genuine issue of material fact preclud-

---

in this case was intended to be used to transport the dragline/crane from one job to another. . . . The scope of the project, however, called for the spud barge to be moved approximately five miles along the bank of the Red River." *Ducote*, 953 F.2d at 1004. The Court concluded that the planned movement of the barge was a factor that would support a jury finding that the transportation function of the spud barge was more than incidental to the use of the barge as a work platform. It therefore reversed the district court's grant of summary judgment.

4. Nor did Tonnesen's affidavit specify whether his employment connection with the Weeks 276 covered the period of time when it performed the transport function. If the Weeks 276 acquired its "vessel in navigation" status by virtue of transport activities it performed prior to Tonnesen's connection to it, that would clearly be

important to his ability to meet the test of "employment-related connection" to a vessel in navigation. As stated above in footnote 2, we do not reach that question on this appeal.

5. It is generally accepted that a vessel does not cease to be a vessel when she is not voyaging, but is at anchor, berthed, or at dockside, even when the vessel is undergoing repairs. *See Latsis*, —— U.S. at ——, 115 S.Ct. at 2192. "At some point, however, repairs become sufficiently significant that the vessel can no longer be considered in navigation. . . . The general rule among the Courts of Appeals is that vessels undergoing repairs or spending a relatively short period of time in drydock are still considered to be 'in navigation' whereas ships being transformed through 'major' overhauls or renovations are not." *Latsis*, —— U.S. at ————, 115 S.Ct. at 2192–93 (citations omitted).

ing summary judgment. *See Cook*, 472 F.2d at 1002.

Another factor that distinguishes this case from the *Cook* line of cases, in which summary judgment was appropriate, is our third prong—whether the Weeks 276's transportation function was merely incidental to its use as a work platform. The rather sparse record below does not establish whether any transportation function performed by the Weeks 276 was merely incidental to its use as a work platform. Unlike the barges in *Burchett* and *Ducrepont*, the Weeks 276 was not permanently moored. There is no dispute that it was moved several times in the weeks preceding the accident and Tonnesen contends that it brought supplies to the site. The record does not reveal, however, the full extent of the purpose of its movement. Like the barge in *Brunet*, the Weeks 276 may have been used to transport a crane or other equipment to and around job sites on a regular basis, even though it remained at each site for the duration of a project. The transportation of a crane or other supplies across navigable waters on a regular basis would provide a basis for a jury to conclude that the transportation function was more than merely incidental to the Weeks 276's use as a work platform.

Or, like the barge in *Ducrepont*, the Weeks 276 may have supported the crane, but not transported it from place to place across navigable waters. Obviously, to accomplish this support function, the structure would necessarily possess the incidental ability to be moved perpendicularly and laterally as "part of [its] regular operation," *Cook*, 472 F.2d at 1002, so that it could be repositioned as required. This limited movement would be insufficient to establish that the Weeks 276 was used for the purpose of navigation, in which case summary disposition on a more complete record might be appropriate.

In any event, pending that development, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.