684 So.2d 472 (1996)
Eddie VAN ATTA
v.
TEAM SERVICES, INC.
No. 96 CA 0190.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
Rehearing Denied January 7, 1997.
*473 Christopher B. Siegrist, Houma, for Appellee Plaintiff Eddie Van Atta.
David K. Johnson, Baton Rouge, for Appellant Defendant Team Services, Inc.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
FOIL, Judge.
This appeal challenges numerous aspects of a trial court's determination that plaintiff is entitled to damages under the Jones Act and general maritime law. After a thorough review of the record, we reverse, finding manifest error in the trial court's finding that plaintiff is a "seaman."

FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff, Eddie Van Atta, brought this lawsuit against his maritime employer, Team Services, Inc., seeking to recover damages under the Jones Act, 46 U.S.C.App. § 688, and general maritime law. The record reflects that plaintiff was hired by defendant on June 9, 1993, to work as a laborer in defendant's yard. That month, plaintiff was assigned to work as a galley hand on a quarterbarge owned by defendant. According to plaintiff, at approximately 3:00 a.m. on one June morning, the generators on the barge malfunctioned. The record reflects that there were three generators on the barge, and plaintiff was responsible for "switching over" the generators, which required that he periodically service the generators. There were flashlights on board the barge, but this particular morning, plaintiff was unable to locate one. He proceeded to the room housing the generators in his house slippers. After successfully starting a generator, plaintiff returned to the galley to make coffee. Fifteen minutes later, the generators shut down again. Plaintiff went back to the generator room, started one successfully, and proceeded to the back of the darkened room to turn on the other generator. In so doing, plaintiff *474 "banged his foot" on something in the room. He attested that his foot was smashed and bleeding. Plaintiff testified that he attempted to enlist the help of men on the barge to start the generators, but was told the job would have to wait until morning.
Plaintiff left the quarterbarge in late June or the first week in August to seek medical attention for his foot. He later returned to work at defendant's yard, and in September of 1993, sustained a second injury to his foot while working in the yard. The parties also stipulated that in December of 1993, plaintiff was injured while working in defendant's yard and received benefits under the Longshore and Harbor Worker's Compensation Act. Plaintiff ceased working for defendant on December 23, 1993.
Defendant urged that plaintiff was not a seaman, but was a land-based employee limited to the remedies provided for in the Longshore and Harbor Worker's Compensation Act. Defendant also argued that plaintiff was not entitled to seaman status because the quarterbarge did not qualify as a vessel for purposes of the Jones Act and general maritime law. Additionally, defendant contested liability, asserted plaintiff's own contributory negligence, and challenged causation as well as plaintiff's disability claim.
Following a trial, the court held that the quarterbarge qualified as a "vessel" under maritime law and that plaintiff proved a substantial connection to that vessel sufficient to entitle him to seaman status. The court found that plaintiff proved that he was "permanently assigned to a vessel" even though he was hired as a laborer, spent most of his six-month employment period working in defendant's yard, and admitted that he knew the assignment was merely temporary in duration.
Upon finding seaman status, the trial court found defendant liable on the Jones Act claim and the unseaworthiness claim. The court believed that the failure of the defendant to provide an alternative lighting source in the room housing the generators constituted negligence, and also rendered the quarterbarge "defective." The court also rejected defendant's contributory negligence argument, finding that the fact plaintiff wore his house slippers to work on the generators did not constitute negligence because there was no employer policy requiring employees to wear their work boots on the quarterbarge. Finally, the trial court dismissed defendant's argument that plaintiff was not "disabled" due to a pre-existing condition, and awarded plaintiff damages totaling $156,700.00.
Defendant took this appeal, challenging virtually every one of the trial court's rulings, including: (1) seaman status; (2) liability; (3) disability; and (4) the amount of damages awarded for pain and suffering, future wage loss and loss of earning capacity and future medical expenses. Because we find merit in defendant's claim that the trial court erred in finding that the quarterbarge qualified as a Jones Act vessel, we pretermit discussion of all other issues raised in this appeal.

STANDARD OF REVIEW
Recently, in Milstead v. Diamond M Offshore, Inc., 95-2446 (La. 7/2/96), 676 So.2d 89, 96, the Louisiana Supreme Court directed state appellate courts to apply Louisiana's manifest error standard of review in general maritime and Jones Act cases. Under the manifest error standard of review enunciated in Stobart v. State of Louisiana, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993), in order to reverse a factual determination, an appellate court must find (1) a reasonable factual basis does not exist in the record for the finding and (2) the record establishes that the finding is clearly wrong or manifestly erroneous. The issue to be resolved by a reviewing court is not whether the factfinder's conclusion is right or wrong, but whether the conclusion is a reasonable one. Reasonable evaluations of credibility and reasonable inferences of fact may not be disturbed on review where conflicts exist in the testimony. Nevertheless, although this court must give great deference to the trier of fact, we have a constitutional duty to review facts and reverse verdicts of a trial court that are clearly wrong based on the evidence, or are clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La. 7/5/94), 639 So.2d 216, 221.
*475 The sole issue we review today is that of seaman status, which is inherently fact specific. Michel v. Total Transportation, Inc., 957 F.2d 186, 189 (5th Cir.1992). Because seaman status is a mixed question of fact and law, the federal appellate courts review a district court's underlying factual findings and factual inferences deduced therefrom under the clearly erroneous standard. The legal conclusions reached by the factfinder based upon the factual findings are reviewed as an issue of law. Id. In light of Milstead v. Diamond M Offshore, Inc., this court will review the trial court's underlying factual findings and inferences drawn therefrom under Louisiana's manifest error standard of review as set forth in Stobart.

SEAMAN STATUS
To recover from an employer under either the Jones Act or the general maritime law, a plaintiff must be a "seaman." 46 U.S.C.App. § 688(a); Pavone v. Mississippi Riverboat Amusement Corporation, 52 F.3d 560, 565 (5th Cir.1995). To establish seaman status for the purposes of a Jones Act claim, a plaintiff must prove a substantial employment-related connection to a vessel in navigation. Chandris, Inc. v. Latsis, ___ U.S. ___, ___, 115 S.Ct. 2172, 2192, 132 L.Ed.2d 314 (1995); McDermott International, Inc. v. Wilander, 498 U.S. 337, 355, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991).
The existence of a vessel is a fundamental prerequisite to Jones Act jurisdiction and is at the core of the test for seaman status. Gremillion v. Gulf Coast Catering Company, 904 F.2d 290 (5th Cir.1990). While the term "vessel in navigation" has escaped precise definition in the federal jurisprudence, the federal courts have identified guidelines to be utilized in determining whether a particular structure or craft qualifies as a "vessel" for Jones Act purposes.[1]
The evidence in the record on the characteristics of the quarterbarge involved in this case is sketchy at best. The record reflects the quarterbarge is used to house and feed defendant's construction workers who work "in the field." It lacks motive power and must be towed to a particular job site, where it is secured for the duration of the job. Defendant's manager testified that he believed that the quarterbarge was Coast Guard documented. The record reflects that in the three-week period that plaintiff was assigned to the quarterbarge, including the date of the injury, the vessel remained secured and was not moved from its location. There is no other evidence regarding the physical characteristics of the quarterbarge, and particularly telling is the absence of any evidence indicating what the structure was secured to and the precise manner in which it was secured, other than a statement that it was secured "by lines." Nor is there any evidence regarding the location of the quarterbarge at the time of the injury.
With these factors in mind, we now turn to the federal jurisprudence in an attempt to determine whether the quarterbarge can be classified as a Jones Act vessel. At the outset, it is quite evident that the quarterbarge is not a traditional seafaring vessel. In determining whether a structure is a vessel, where it is not readily identifiable by its characteristics as such, the touchstone of the analysis is to ascertain the purpose for which the craft was built and the business in which it was engaged. Burchett v. Cargill, Inc., 48 F.3d 173, 176 (5th Cir.1995); Michel v. Total Transportation Inc., 957 F.2d at 189; Gremillion v. Gulf Coast Catering Co., 904 F.2d at 293. In looking to the primary purpose of the structure, a court attempts to ascertain whether the structure is used primarily for the transportation of cargo, equipment and persons across navigable waters, because transportation or commerce is the purpose of a traditional seafaring vessel. If the primary purpose of the structure is transportation, the federal courts have traditionally accorded the structure vessel status, even if lacking all attributes of conventional seafaring vessels, and even if not engaged in *476 actual navigation at the time of the incident sued upon. See Tonnesen v. Yonkers Contracting Co., Inc., 82 F.3d 30 (2d Cir.1996).
Because the motive of the designer is not always readily available, federal courts look to the physical characteristics of the structure in an attempt to ascertain whether the structure's intended purpose is transportation across navigable waters. Michel v. Total Transportation, Inc., 957 F.2d at 190. The objective features suggesting that a structure's intended purpose is transportation across navigable waters are: (1) navigation aids; (2) raked bow; (3) lifeboats and other lifesaving equipment; (4) bilge pumps; (5) crew quarters; and (6) registration as a vessel with the Coast Guard. Id.; Gremillion v. Gulf Coast Catering Company, 904 F.2d at 293. Additional factors relevant to the inquiry include the intention of the owner to move the structure on a regular basis, the ability of a submerged structure to be reflected, and the length of time that the structure remained stationary. Id.
At the outset of our analysis, it is evident that the purpose of defendant's quarterbarge is not transportation. The purpose of the structure is to house and feed defendant's construction workers who work "in the field." It lacks motive power, and must be towed to work sites, where it is secured for the duration of the job. Although it may be transportable over navigable waters, this transportation function is clearly incidental to its primary purpose of providing housing for defendant's construction crew. See Gremillion v. Gulf Coast Catering Company, 904 F.2d at 294. Further, the non-transportation purpose of this structure is firmly established in the record, the mere fact this structure is Coast Guard documented and contains living structures (by virtue of its very design), two of the many attributes of "vessels" identified by the federal courts, cannot serve to create a transportation purpose for the quarterbarge.
Under federal jurisprudence, a structure whose purpose or primary business is not navigation or commerce across navigable waters may still satisfy the Jones Act vessel requirement if, at the time of the worker's injury, the structure was actually in navigation or transit. Tonnesen v. Yonkers Contracting Company, 82 F.3d at 34; DiGiovanni v. Traylor Bros., Inc., 959 F.2d 1119, 1123 (1st Cir.), cert. denied, 506 U.S. 827, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992); Hatch v. Durocher Dock and Dredge, Inc., 33 F.3d 545, 548 (6th Cir.1994); Gremillion v. Gulf Coast Catering Company, 904 F.2d at 293; Bernard v. Binnings Construction Co., Inc., 741 F.2d 824 (5th Cir.1984).
The term "navigation" has been defined in the federal jurisprudence as the transportation of passengers, cargo, or equipment from place to place across navigable waters. See Tonnesen v. Yonkers Contracting Co., Inc., 82 F.3d at 34. It is evident that the quarterbarge in this case was not in actual navigation at the time of plaintiff's injury, because on the date of the injury and in a three-week period preceding and following the injury, the quarterbarge was secured and was never transported from its location. See Gremillion v. Gulf Coast Catering Co., 904 F.2d 290 (finding that a quarterboat used as a floating hotel for oil field workers, which was spudded down to the seafloor and fixed to a bank, was not "in navigation" at the time of the incident sued upon); Hatch v. Durocher Dock and Dredge, Inc., 33 F.3d 545 (finding that a barge involved in construction work was not in navigation because it was not "actually underway.")
Under several recent federal cases, our inquiry would be at an end, for two circuits have held that where the structure's primary purpose is not transportation, to establish vessel status, the claimant must prove that the injury occurred while the float or other craft is in actual navigation or transit. Hatch v. Durocher Dock and Dredge, Inc., 33 F.3d at 547; DiGiovanni v. Traylor Bros. Inc., 959 F.2d at 1123. But see Tonnesen v. Yonkers Contracting Co., 82 F.3d at 33-34 (finding the primary purpose test developed in the DiGiovanni case is too restrictive.)
We note that there is one more possibility for establishing vessel status appearing in some federal cases. In Gremillion v. Gulf Coast Catering Co., 904 F.2d at 293, the Fifth Circuit stated that even "exotic craft" could *477 qualify as vessels if frequently navigated or if exposed to the perils associated with maritime service. The possibility of exposure to the perils of the sea was a factor in finding vessel status in Tonnesen.
In finding vessel status in this case, the trial court stated that plaintiff was exposed to the hazards of the sea typical to seaman. However, there is no reasonable basis in the record to support this conclusion, because there was no testimony regarding the location of the structure. Furthermore, there was no evidence in the record regarding the frequency of movement of the quarterbarge.
In the absence of such evidence, we can only conclude that this case falls closely in line with the Gremillion case, where vessel status was denied to a quarterboat by the Fifth Circuit, even though all possible avenues for finding vessel status were utilized therein. Although the quarterboat possessed seven of the nine physical attributes identified by the court for vessel status, such was denied to the quarterboat because it did not have a transportation function, it was not engaged in actual navigation at the time of the injury, but was instead secured to the seafloor and bank, and there was no evidence to suggest it ever provided housing on the open sea.
Similarly, although the quarterbarge at issue herein possesses two attributes of traditional vessels (Coast Guard documentation and living quarters) it does not have a transportation function, it was not engaged in actual navigation at the time of the injury and there is no evidence to suggest it was located somewhere on the open sea.
Based upon our review of the record, we find the trial court's conclusion that plaintiff was exposed to the perils of the sea lacks reasonable support in the record and is manifestly erroneous based on the lack of evidence therein. In light of the federal jurisprudence on vessel status, especially the Gremillion decision, we hold that the trial court committed legal error in according the quarterbarge vessel status. Accordingly, we reverse that determination.

CONCLUSION
Based on the foregoing, we find that plaintiff failed to establish the existence of a vessel and therefore is not entitled to recover on the Jones Act and general maritime claims. The judgment appealed from is reversed. All costs of this appeal are assessed to plaintiff, Eddie Van Atta.
REVERSED.
NOTES
[1] Although we speak of the term "Jones Act vessel" and are mindful that there is also an unseaworthiness claim under the general maritime law, the same tests are employed by the federal courts in deciding the issue of existence of a "vessel" where an employee asserts both a Jones Act and general maritime claim against a maritime employer. See Pavone v. Mississippi Riverboat Amusement Corporation, 52 F.3d 560 (5th Cir.1995).