Glen **PEDERSON**, Plaintiff,

v.

**POWELL–DUFFRYN TERMINALS, INC., PCA Engineering, Inc.,** Defendants.

No. CIV. 97–3462 (WHW).

United States District Court, D. New Jersey.

Feb. 9, 1999.

John E. Jureller, Jr., Shestack & Young, LLP, Jersey City, NJ, for plaintiff Glenn Pederson.

George S. Kolbe, Chalos & Brown, P.A., Clifton, NJ, for defendant Powell–Duffryn Terminals, Inc.

Craig W. Miller, Gallo, Geffner & Fenster, Continental Plaza II, Hackensack, NJ, for defendant PCA Engineering, Inc.

## OPINION

WALLS, District Judge.

This matter comes before the Court on the motion of plaintiff Pederson for an interim order to compel PCA Engineering Inc. ("PCA") to pay his maintenance and cure, the motion of defendant PCA for summary judgment to dismiss the complaint and Powell–Duffryn Terminals, Inc.'s ("Powell–Duffryn") cross-claims against it, and the motion of defendant Powell–Duffryn for summary judgment on its cross-claims against PCA. The motion of plaintiff Pederson for an interim order is denied; defendant PCA's motion for summary judgment to dismiss the complaint and cross-claims is denied; defendant Powell–Duffryn's motion for summary judgment on its cross-claims against defendant PCA is denied.

## I. Background and Procedural History

Plaintiff filed a complaint in this action on July 14, 1997. In his complaint, plaintiff alleges that he sustained serious personal injuries in the course of his duties as a harbor worker and diver employed by PCA at the Powell–Duffryn waterfront facilities on or about July 14, 1995. (Compl.¶¶ 10, 21, 27.) According to plaintiff, on that date, as an employee of PCA, he performed services for Powell–Duffryn in the navigable waters of the United States abutting the waterfront facility near East 30th Street, Bayonne, New Jersey. (Id.¶ 16.) Powell–Duffryn had hired PCA to perform corrosion control and replace anodes (large pieces of metal which protect the piles of a pier) on its facilities from July 10 to July 18, 1995. (Lombardi

Certification ¶ 7.) Plaintiff asserts that when he was on a vessel owned and constructed by PCA specifically for this task, he loaded and moved materials including anodes for installation at the Powell–Duffryn pier. (Id. ¶¶ 25–26; Mem. of Law in Supp. of Pl.'s Mot. at 1.) According to plaintiff, in the course of this work, while underwater, he was struck by an anode and trapped between it and a pier pile and suffered severe and disabling injuries as a result. (Compl. ¶ 26; Mem. of Law in Supp. of Pl.'s Mot. at 1.)

After the accident, plaintiff did not see a doctor, and despite the injury to his back, continued working until March, 1996. (Young Declaration ¶ 5; Lombardi Declaration Ex. C.) Between July, 1995 and March, 1996, plaintiff hurt his back on the job another time, and on March 8, 1996 he strained it again. (Lombardi Declaration Ex. C.) Plaintiff asserts that he has been unable to work since March, 1996 due to the condition of his back. (Young Declaration ¶ 5.) At that time, he wrote a letter to PCA recounting his injuries, and PCA filed a report with the New Jersey Division of Workers' Compensation. (Lombardi Certification, Ex. C, D.) Sometime after that, plaintiff underwent back surgery. (Mem. of Law in Supp. of Pl.'s Mot. at 1–2.) Plaintiff received workers' compensation benefits for his medical expenses and $453.09 per week for lost wages from approximately March, 1996 to November, 1997. (Young Declaration ¶¶ 7–8.) In November, 1997, Liberty Mutual Insurance Co., the insurance carrier for defendant PCA, informed plaintiff that PCA had transferred him from its New Jersey workers' compensation policy to its Jones Act policy. (Id.¶ 8.) Their reason for doing so was that the complaint plaintiff filed in this action asserted claims under the Jones Act, 46 App. U.S.C. § 688, and the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 902(3)(G); therefore the state workers' compensation benefits were statutorily terminated on November 24, 1997. (Br. in Supp. of Def.'s PCA Mot. at 3.) Because PCA's Jones Act policy had a $25,000 limit and the amount paid to plaintiff in the form of wages and medical expenses had exceeded that, plaintiff's benefits were terminated. (Young Declaration ¶ 8.) Since November 22,

1997, plaintiff has not been paid for his lost wages or medical expenses. (Id.¶ 9.) On August 21, 1998, plaintiff filed a petition for workers' compensation benefits for an August 8, 1995 injury with the New Jersey Division of Workers' Compensation. (Def. PCA's Reply Letter at 6.)

In his complaint, plaintiff asserts that Powell–Duffryn owned, leased, operated, managed, and controlled the pier and adjoining land in that waterfront facility. (Id.¶¶ 11–15.) He claims that Powell–Duffryn failed to provide him with a safe workplace, with reasonable and adequate equipment to perform his duties in a safe manner, failed to supervise the work performed on its facility on July 14, 1995, and failed to comply with applicable laws, rules, and regulations. (Id. ¶¶ 17–20.) Plaintiff also contends that the carelessness and negligence of defendant PCA in the operation of its vessel proximately caused his injuries. (Id.¶ 27.)

It is plaintiff's contention that he is a seaman within the meaning of the Jones Act, 46 App. U.S.C. § 688, and is entitled to all the protections of that Act. That he was on a vessel in the navigable waters of the United States transporting materials to other positions in and about those navigable waters renders him a seaman, according to plaintiff. (Id.¶ 29–31.) Plaintiff claims that he is entitled to maintenance and cure under the Act, and defendants have failed to pay him without just cause. (Id.¶ 37.) Plaintiff's doctors have recommended that he have further back surgery, and he asserts that he will not be able to have this surgery unless defendant PCA pays for his medical bills and expenses. (Young Declaration ¶ 6.) In addition to the maintenance and cure, plaintiff asks for $5,000,000 in damages for his injuries.

Plaintiff requests that this Court enter an interim order requiring defendant PCA to pay him maintenance and cure, loss of wages and medical expenses, under the Jones Act, 46 App. U.S.C. § 688 or the New Jersey workers' compensation statute, N.J.S.A. 34:15–1, et seq. Defendant PCA argues that plaintiff is not a seaman under the Jones Act, 46 App. U.S.C. § 688, and not entitled to a maintenance and cure remedy. It moves for

summary judgment to dismiss the complaint on the grounds that this Court has no jurisdiction to consider plaintiff's administrative claims.

Defendant Powell–Duffryn has filed cross-claims against defendant PCA for contribution, common law indemnification, contractual indemnification, and breach of contract. PCA moves to dismiss them; Powell–Duffryn contends that they should not be dismissed because PCA did not assert any arguments to support its motion. Powell–Duffryn moves for summary judgment on its cross-claims against PCA.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248, 106 S.Ct. 2505. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Sound Ship Building Corp. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir.1976), cert. denied, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249, 106 S.Ct. 2505. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Wahl v. Rexnord, Inc. 624 F.2d 1169, 1181 (3d Cir.1980).

### B. Whether the Court Has Jurisdiction

Because this Court cannot proceed with this case if it lacks jurisdiction, the jurisdictional issue will be decided first. Defendant PCA argues that this Court has no jurisdiction under the Jones Act, 46 App. U.S.C. § 688, because plaintiff is not a seaman. That defendant also maintains that this Court lacks jurisdiction to hear plaintiff's claim for benefits because the benefits which he seeks are exclusively administered by the New Jersey Division of Workers' Compensation or the United States Department of Labor. PCA contends that only the New Jersey Division of Workers' Compensation or the Department of Labor can determine plaintiff's claims for benefits. Moreover, each of plaintiff's compensation claims is mutually exclusive because an employee eligible for benefits under one statute is ineligible to receive benefits from the other.

Plaintiff concedes that he is not a worker covered by the LHWCA. He argues that this Court has admiralty jurisdiction over the issue of maintenance and cure under the Jones Act, 46 App. U.S.C. § 688. According to plaintiff, if he is not a "seaman" under the Jones Act, then his benefits should arise from the New Jersey Workers' Compensation Act. Plaintiff maintains that this Court has jurisdiction to enter an order to compel either the recommencement of workers' compensation benefits or a hearing to determine his entitlement under N.J.S.A. 34:15–49.

██ Does the Court have admiralty jurisdiction under Article III, § 2 of the U.S. Constitution and 28 U.S.C. § 1333 of this action? For this Court to have admiralty jurisdiction, the incident causing plaintiff's

injury "must have a potential impact on maritime commerce and bear a substantial relationship to traditional maritime activity, in addition to occurring on navigable waters." *Sinclair v. Soniform, Inc.*, 935 F.2d 599, 601 (3d Cir.1991). The Third Circuit derived this standard from a trilogy of Supreme Court cases. First, in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 253–254, 93 S.Ct. 493, 497, 34 L.Ed.2d 454 (1972), the Supreme Court criticized the traditional test which looked only to the locality of the wrong to determine the existence of admiralty jurisdiction and concluded that the incident in question must "bear a significant relationship to traditional maritime activity." 409 U.S. at 268, 93 S.Ct. at 504. Next, the Court announced that a maritime activity which has a potential impact on maritime commerce can support admiralty jurisdiction. *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). Finally, *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990) clarified the potential impact on commerce requirement: it must be determined in terms of the general characteristics of the activity rather than the particular facts of the incident or the actual effect that it had. From this Supreme Court jurisprudence, the Third Circuit crafted four criteria to aid in the determination of whether an activity is substantially related to traditional maritime pursuits and supports maritime jurisdiction: "(1) the functions and roles of the parties, (2) the types of vehicles and instrumentalities involved, (3) the causation and type of injury, and (4) traditional concepts of the role of admiralty law." *Sinclair*, 935 F.2d at 602 (citations omitted).

Here, plaintiff's work had a substantial relation to maritime activity. Plaintiff was employed in navigable waters, and he was engaged in underwater construction on the piles of a pier. Recently, the Third Circuit concluded that a diver who sought recovery for injuries he sustained during the construction of an artificial reef had invoked admiralty jurisdiction. *Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252 (3d Cir.1998). Similarly, the present plaintiff is a diver who seeks recovery for injuries incurred during underwater construction on the piles of a pier. Plaintiff alleges that he was on a vessel in navigable waters. Defendant PCA argues that the water craft plaintiff was on was not a *vessel* because it was made out of a sheet of plywood and styrofoam, constructed not to be used in navigation, but to assist in welding anodes to dock piles. Although there is dispute as to whether plaintiff was on a *vessel*, the Court finds that plaintiff's work had a substantial relation to maritime activity sufficient to support admiralty jurisdiction.

## C. Plaintiff's Motion for an Interim Order and Defendant PCA's Motion for Summary Judgment

Plaintiff asks this Court to compel defendant PCA to pay him lost wages and benefits in the amount of $453.09 per week, retroactively from November 22, 1997, and to begin paying his medical bills, effective immediately. He claims that he is entitled to such relief under the Jones Act, 46 App. U.S.C. § 688, or the New Jersey workers' compensation statute, N.J.S.A. 34:15–1, et seq. Defendant PCA argues that plaintiff's motion effectively seeks partial summary judgment on the issue of whether plaintiff is a seaman under the Jones Act, 46 App. U.S.C. § 688. PCA argues that plaintiff is not a seaman under that Act and seeks summary judgment dismissing the complaint.

The Jones Act provides a cause of action for "any seaman who shall suffer personal injury in the course of his employment." 46 App. U.S.C. § 688. However, the Act itself does not define the term "seaman." The Supreme Court has articulated two requirements for seaman status under the Jones Act:

> First ... an employee's duties must contribute to the function of a vessel or to the accomplishment of its mission.... Second, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997)(quoting *Chandris, Inc.v. Latsis*, 515 U.S. 347, 368, 115 S.Ct. 2172, 2179, 132 L.Ed.2d 314 (1995)).

The purpose of this second requirement is "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190. The *Chandris* Court announced that the "duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman...." 515 U.S. at 370, 115 S.Ct. at 2190–91.

■ The issue whether plaintiff is a "seaman" under the Jones Act is a mixed question of law and fact. *Chandris*, 515 U.S. at 369, 115 S.Ct. at 2190. It is a court's duty to define the appropriate standard based on the statutory terms. *Chandris*, 515 U.S. at 369, 115 S.Ct. at 2190. If reasonable persons could apply the appropriate legal standard and differ as to whether the employee is a seaman, then it is a question for the jury. *Chandris*, 515 U.S. at 369, 115 S.Ct. at 2190.

Defendant PCA argues that reasonable persons cannot differ as to whether Pederson is a "seaman" because he was a land-based diver and the floating device he was on constitutes neither a *vessel* nor a *vessel in navigation*. (Br. in Supp. of Def.'s PCA Mot. for Summ. J. at 5.) Plaintiff contends that there is a material question of fact as to whether he is a "seaman" because he was a diver based on a *vessel* in navigable waters. Plaintiff argues that divers working off of floating water crafts have been found to be "seamen" in other cases and whether he is a "seaman" is a question of fact. He also asserts that his water craft was more than just a flotation device because he used it to navigate himself and equipment back and forth between the shore and piers. (Pl.'s Further Mem. of Law in Reply to Def.'s Opp. at 6.)

■ Neither the United States Supreme Court nor the Third Circuit has articulated a definite test to determine whether a water craft is a *vessel* for the purposes of the Jones Act, 46 App. U.S.C. § 688. The Supreme Court has stated that the question of whether a water craft is a *vessel in navigation* "for

Jones Act purposes is a fact-intensive question that is normally for the jury and not the court to decide." *Chandris*, 515 U.S. at 373, 115 S.Ct. at 2192. The Fifth Circuit has devised a test for such a determination which involves an "examination of (i) the purpose for which it is constructed, and (ii) the business in which it is engaged." *Guidry v. Continental Oil Co.*, 640 F.2d 523, 529 n. 18 (5th Cir.1981), *cert. denied*, 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87. That Court of Appeals later explained that *vessels in navigation* are "structures designed or utilized for transportation of passengers, cargo or equipment from place to place across navigable waters." *Bernard v. Binnings Construction Co.*, 741 F.2d 824, 828–29 (5th Cir.1984) (citations omitted). Although summary judgment is rarely granted on the issue, the *Bernard* court compiled a list of factors common to those instances in which summary judgment was granted to a party opposing the designation of a water craft as a *vessel:*

> (1) the structures involved were constructed and used primarily as work platforms; (2) they were moored or otherwise secured at the time of the accident; and (3) although they were capable of movement and were sometimes moved across navigable waters in the course of normal operations, any transportation function they performed was merely incidental to their primary purpose of serving as work platforms. 741 F.2d at 831.

The Fifth Circuit's test has been adopted in varying forms by other circuits, including the First and Second. *See, e.g., DiGiovanni v. Traylor Bros., Inc.*, 959 F.2d 1119 (1st Cir.)(en banc), *cert. denied*, 506 U.S. 827, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992); *Tonnesen v. Yonkers Contracting Co.*, 82 F.3d 30 (2d Cir.1996). The Second Circuit has modified the Fifth Circuit's summary judgment factors to substitute the present purpose of the structure for the original purpose of construction. *Tonnesen*, 82 F.3d at 36. Applying the modified test, the Second Circuit found that there was a material issue of fact as to whether a stationary barge used as a work platform was a *vessel in navigation*. 82 F.3d at 37. In particular the *Tonnesen* court found that the "transportation of a

crane or other supplies across navigable waters on a regular basis would provide a basis for a jury to conclude that the transportation function was more than merely incidental to the [barge's] use as a work platform." 82 F.3d at 37.

Stationary or floating water crafts have been deemed *vessels* for Jones Act purposes. *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31, 37 (3d Cir.1975)(citing *Grimes v. Raymond Concrete Pile Co.,* 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958); *Gianfala v. Texas Co.,* 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955)) (an offshore oil rig); *The Showboat,* 47 F.2d 286 (D.Mass.1930); *The Ark,* 17 F.2d 446 (D.Fla.1926). Our Supreme Court has found a material issue of fact to exist as to whether a floating platform was a *vessel in navigation. Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 92, 112 S.Ct. 486, 494, 116 L.Ed.2d 405 (1991). There, although the platform itself had no power or means of navigation, at the time of the injury it was transporting the plaintiff and equipment while towed by a tugboat. Recently, without discussion, the Third Circuit treated a crane barge anchored 150 feet offshore, which served as a dive station, as a *vessel* for purposes of the Jones Act. *Foulk,* 144 F.3d 252. Plaintiff Foulk was a diver hired for a ten-day project to construct an artificial reef. He slept ashore and every morning took a motor launch to the offshore dive station. The district court had found that Foulk was not a seaman because his ten-day assignment was temporary and his connection with the vessel not substantial. *Foulk,* 961 F.Supp. 692, 698 (D.N.J.). In a reversal of the district court's grant of summary judgment to the defendant, the Third Circuit wrote that the durational element of the substantial connection requirement cannot be defined by an absolute number. 144 F.3d at 259.

■ Here, there is a material issue of fact as to whether the water craft plaintiff was aboard is a *vessel* for Jones Act purposes. That plaintiff used this water craft for transportation back and forth between the shore and the pier could provide to the trier of fact a basis to conclude that the water craft was a *vessel.* Although defendant does not argue that plaintiff's connection to the vessel was too temporary to be substantial, the *Foulk* opinion is determinative for other reasons. As a matter of law, a diver who works off of an anchored floating barge is not precluded from seaman status. The trier of fact could find that the water craft is a *vessel* and plaintiff a seaman for the purposes of the Jones Act, 46 App. U.S.C. § 688. Therefore, defendant PCA's motion for summary judgment is denied.

Because it cannot yet be determined whether plaintiff is a seaman under the Jones Act, 46 App. U.S.C. § 688, an interim order to compel PCA to pay plaintiff's maintenance and cure under the Act cannot be entered. The Court is without jurisdiction to provide plaintiff's alternate remedy, an order to compel the reinstatement of his workers' compensation or a hearing on the issue. The New Jersey Division of Workers' Compensation has exclusive jurisdiction over all claims for workers' compensation benefits. N.J.S.A. 34:15–49. Plaintiff recently filed a petition for benefits, and after a Workers' Compensation Division judge makes a determination of that issue, he may appeal, if necessary, to the Appellate Division of the New Jersey Superior Court. N.J.S.A. 34:15–66. This Court does not have jurisdiction to compel payments of workers' compensation benefits to plaintiff.

**D. Defendant PCA's Motion for Summary Judgment to Dismiss Powell–Duffryn's Cross–Claims**

Because PCA has provided no brief or argument to support its motion for summary judgment to dismiss the counterclaims, its motion is denied.

**E. Defendant Powell–Duffryn's Cross–Motion for Summary Judgment Against PCA**

■ Powell–Duffryn moves for summary judgment on cross-claims against defendant PCA. In the cross-claims, Powell–Duffryn sued PCA for contribution, common law indemnification, contractual indemnification, and breach of contract for failure to provide insurance coverage. Powell–Duffryn alleges that PCA supplied certain corrosion control services at its Bayonne facility pursuant to

an agreement. (Br. of Def. Powell–Duffryn in Supp. of Cross–Mot. for Summ. J. at 3.) According to Powell–Duffryn, that agreement contained a Contractor's Liability form whereby PCA agreed to indemnify and defend Powell–Duffryn from and against all claims arising out of PCA's negligence. (Id. at 3–4, Ex. E ¶ B.) PCA also agreed to provide Powell–Duffryn with insurance coverage of at least $1,000,000 to indemnify it against employee and third-party liability. (Id. at 4, Ex. E ¶ C.) Powell–Duffryn claims that PCA failed to provide such insurance.

Powell–Duffryn argues that if the alleged accident was caused by any negligence, other the plaintiff's own, it was PCA's negligence. (Id. at 7.) PCA's Operations Manager, Mr. Frank Lombardi, supervised plaintiff's work on the day of the accident and lifted, handed, and lowered into the water the anodes which plaintiff claims crushed him. (Id. at 7, Lombardi Certification ¶ 7.) Accordingly, Powell–Duffryn contends that PCA has a contractual duty to defend, indemnify, and provide insurance coverage.

PCA maintains that there was no formal contract with Powell–Duffryn. (PCA's Br. in Opp. of Powell–Duffryn's Cross–Mot. at 1.) Rather, PCA argues that Powell–Duffryn verbally ordered an anode replacement from it and gave a purchase order number on May 21, 1995 for anode replacement work. (Id.) PCA claims that the Contractor's Liability form was a blanket, generalized form which Powell–Duffryn asked it to execute in February, three months before the verbal work order was placed. (Id.) Moreover, PCA claims that Powell–Duffryn was provided with two certificates of insurance which indemnified PCA against the liability of employees and third-parties, but Powell–Duffryn did not ask to be named as an additional insured to the policies. (Id. at 1–2.) PCA argues that because there has been no finding of negligence on the part of PCA, the indemnification provision of the Contractor's Liability form has not been triggered. (Id. at 2.)

The Court finds that there are genuine issues of material fact as to whether PCA has a duty to indemnify, defend, and provide Powell–Duffryn with insurance coverage.

The indemnification provision of the Contractor's Liability form requires PCA to indemnify and defend Powell–Duffryn if PCA, its employees, workmen, or agents fail to comply with rules and regulations then in force or if they are negligent. (Br. of Def. Powell–Duffryn in Supp. of Cross–Mot. for Summ. J. Ex. E ¶ B.) Because there has not yet been a finding of negligence or noncompliance with rules and regulations on the part of PCA, the indemnification provision of the Contractor's Liability form has not been actuated. There is also a material issue of fact as to whether PCA offered to provide Powell–Duffryn with insurance coverage and Powell–Duffryn failed to accept the offer. Because of the existence of these material issues of fact, summary judgment for Powell–Duffryn as to its cross-claims is denied.

### III. Conclusion

Plaintiff Pederson's motion for an interim order to compel Defendant PCA to pay his maintenance and cure is denied. Defendant PCA's motion for summary judgment to dismiss the complaint and Powell–Duffryn's cross-claims against it is denied. Defendant Powell–Duffryn's cross-motion for summary judgment on its cross-claims against defendant PCA is denied.

SO ORDERED.

### ORDER

This matter comes before the Court on the motion of plaintiff Pederson for an interim order requiring PCA Engineering Inc. ("PCA") to pay his maintenance and cure, the motion of defendant PCA for summary judgment to dismiss the complaint and defendant Powell–Duffryn Terminals, Inc.'s ("Powell–Duffryn") cross-claims against it, and the motion of defendant Powell–Duffryn for summary judgment on its cross-claims against defendant PCA. Upon consideration of the submissions of the parties, oral argument, and for the reasons stated in the accompanying opinion, it is on February, 1999:

ORDERED that the motion of plaintiff Pederson for an interim order is denied;

ORDERED that the motion of defendant PCA for summary judgment to dismiss the

complaint and the cross-claims by Powell–Duffryn against it is denied;

ORDERED that the motion of defendant Powell–Duffryn for summary judgment on its cross-claims against defendant PCA is denied.